GORE *v.* UNITED STATES.

No. 668.  Argued May 19, 1958.—Decided June 30, 1958.

*Joseph L. Rauh, Jr.* and *James H. Heller,* acting under appointment by the Court, 355 U. S. 909, argued the cause for petitioner.  With them on the brief was *John Silard.*

*Beatrice Rosenberg* argued the cause for the United States.  With her on the brief were *Solicitor General Rankin, Assistant Attorney General Anderson* and *J. F. Bishop.*

Mr. Justice Frankfurter delivered the opinion of the Court.

This is a prosecution under an indictment containing six counts for narcotics offenses. Four counts were based on provisions of the Internal Revenue Code of 1954 and two counts on the Narcotic Drugs Import and Export Act, as amended. The first three counts derive from a sale on February 26, 1955, of twenty capsules of heroin and three capsules of cocaine; the last three counts derive from a sale of thirty-five capsules of heroin on February 28, 1955. Counts One and Four charged the sale of the drugs, on the respective dates, not "in pursuance of a written order" of the person to whom the drugs were sold on the requisite Treasury form, in violation of § 4705 (a) of the Internal Revenue Code of 1954. Counts Two and Five charged the sale and distribution of the drugs on the respective dates not "in the original stamped package or from the original stamped package," in violation of § 4704 (a) of the Internal Revenue Code of 1954. Counts Three and Six charged facilitating concealment and sale of the drugs on the respective dates, with knowledge that the drugs had been unlawfully imported, in violation of § 2 (c) of the Narcotic Drugs Import and Export Act,[1] as amended by the Act of November 2, 1951, 65 Stat. 767. In short, Congress had made three distinct offenses in connection with the vending of illicit drugs, and the petitioner, having violated these three independent provisions, was prosecuted for all three as separate wrongdoings, despite the fact that these violations of what Congress had proscribed were compendiously committed in single transactions of vending. Duly tried before a jury, petitioner was convicted, and no question touch-

---

[1] 35 Stat. 614, as amended. This provision was subsequently amended, 70 Stat. 570, 21 U. S. C. (Supp. V) § 174.

ing the conviction is before us. In controversy is the legality of the sentences imposed by the trial court. These were imprisonment for a term of one to five years, imposed on each count, the sentences on the first three counts to run consecutively, the sentences on the remaining three counts to run concurrently with those on the first three counts. Thus the total sentence was three to fifteen years. Petitioner moved, under 28 U. S. C. § 2255, to vacate the sentence, claiming that for all three counts a sentence as for only one count could be imposed. The motion was denied and the Court of Appeals affirmed, 100 U. S. App. D. C. 315, 244 F. 2d 763, with expressions of doubt by two of the judges, who felt themselves bound by *Blockburger* v. *United States,* 284 U. S. 299. We brought the case here, 355 U. S. 903, in order to consider whether some of our more recent decisions, while not questioning *Blockburger* but moving in related areas, may not have impaired its authority.

We adhere to the decision in *Blockburger* v. *United States, supra.* The considerations advanced in support of the vigorous attack against it have left its justification undisturbed, nor have our later decisions generated counter currents.

That the *Blockburger* opinion did not lay out with particularity the course of anti-narcotics legislation is scant basis for suggesting that the Court was unaware of it or did not duly heed the relevant criteria for statutory construction in dealing with the specific legislation before it. The Court was not an innocent in the history of narcotics legislation. *Blockburger* was not the first case that brought prosecutions under successive enactments dealing with the control of narcotics before the Court. At the time of *Blockburger,* it was not customary to make the whole legislative history connected with particular statutes in adjudication part of the conventional apparatus of an opinion. What is more to the point about the

*Blockburger* decision is that the unanimous Court that rendered it then included three Justices conspicuous for their alertness in safeguarding the interests of defendants in criminal cases and in their insistence on the compassionate regard for such interests. Invidiousness is not implied in saying that Mr. Justice Brandeis, Mr. Justice Butler and Mr. Justice Roberts [2] would not have joined in finding that Congress established independent curbs as tactical details in the strategy against illicit narcotics trade, if it could be reasonably maintained that what in fact Congress was doing was merely giving different labels to the same thing. The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic. In *Blockburger,* the offender was indicted, convicted, and cumulatively sentenced for two separate offenses: selling forbidden drugs not "in the original stamped package" (now § 4704 (a) of the Internal Revenue Code), and of selling such drugs not "in pursuance of a written order of the person to whom such article is sold" (now § 4705 (a) of the Internal Revenue Code). The petitioner here was likewise indicted, tried, convicted and cumulatively sentenced for the two foregoing offenses and, in addition, for violating the amended § 2 (c) of the Narcotic Drugs Import and Export Act. And so while

---

[2] For typical expressions of the attitudes of these members of the Court, see, *e. g., Horning* v. *District of Columbia,* 254 U. S. 135, 139 (dissenting opinion of Brandeis, J.) ; *Burdeau* v. *McDowell,* 256 U. S. 465, 476 (same) ; *Olmstead* v. *United States,* 277 U. S. 438, 471, 485 (dissenting opinions of Brandeis and Butler, JJ.) ; *Sorrells* v. *United States,* 287 U. S. 435, 453 (separate opinion of Roberts, J., joined by Brandeis, J.) ; *Snyder* v. *Massachusetts,* 291 U. S. 97, 123 (dissenting opinion of Roberts, J., joined by Brandeis and Butler, JJ.) ; *Palko* v. *Connecticut,* 302 U. S. 319, 329 (dissent of Butler, J.).

Blockburger was sentenced to ten years for the two offenses, petitioner was sentenced to a maximum of fifteen years. The Court of Appeals inevitably found the *Blockburger* case controlling.

We are strongly urged to reconsider *Blockburger* by reading the various specific enactments of Congress as reflecting a unitary congressional purpose to outlaw non-medicinal sales of narcotics. From this the conclusion is sought to be drawn that since Congress had only a single purpose, no matter how numerous the violations by an offender, of the specific means for dealing with this unitary purpose, the desire should be attributed to Congress to punish only as for a single offense when these multiple infractions are committed through a single sale. We agree with the starting point, but it leads us to the opposite conclusion. Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter. The three penal laws for which petitioner was convicted have different origins both in time and in design. The present § 2 (c) of the Narcotic Drugs Import and Export Act derives from an enactment of February 9, 1909, § 2, 35 Stat. 614. The present § 4705 (a) of the Internal Revenue Code of 1954 derives from the Act of December 17, 1914, § 2, 38 Stat. 785, 786. The present § 4704 (a) of the Internal Revenue Code of 1954 derives from the Revenue Act of 1918, § 1006, 40 Stat. 1057, 1130 (1919).[3] It seems more daring than con-

---

[3] This statute, amendatory of the 1914 Act, *supra*, introduced the "original stamped package" concept.

vincing to suggest that three different enactments, each relating to a separate way of closing in on illicit distribution of narcotics, passed at three different periods, for each of which a separate punishment was declared by Congress, somehow or other ought to have carried with them an implied indication by Congress that if all these three different restrictions were disregarded but, forsooth, in the course of one transaction, the defendant should be treated as though he committed only one of these offenses.

This situation is *toto coelo* different from the one that led to our decision in *Bell* v. *United States,* 349 U. S. 81. That case involved application of the Mann Act—a single provision making it a crime to transport a woman in interstate commerce for purposes of prostitution. We held that the transportation of more than one woman as a single transaction is to be dealt with as a single offense, for the reason that when Congress has not explicitly stated what the unit of offense is, the doubt will be judicially resolved in favor of lenity. It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics. Both in the unfolding of the substantive provisions of law and in the scale of punishments, Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws. Nor need we be detained by two other cases relied on, *United States* v. *Universal C. I. T. Credit Corp.,* 344 U. S. 218, and *Prince* v. *United States,* 352 U. S. 322. In the former we construed the record-keeping provisions of the Fair Labor Standards Act as punishing "a course of conduct." Of

the *Prince* case, it suffices to say that the Court was dealing there "with a unique statute of limited purpose." 352 U. S., at 325.

Finally, we have had pressed upon us that the *Blockburger* doctrine offends the constitutional prohibition against double jeopardy. If there is anything to this claim it surely has long been disregarded in decisions of this Court, participated in by judges especially sensitive to the application of the historic safeguard of double jeopardy. In applying a provision like that of double jeopardy, which is rooted in history and is not an evolving concept like that of due process, a long course of adjudication in this Court carries impressive authority. Certainly if punishment for each of separate offenses as those for which the petitioner here has been sentenced, and not merely different descriptions of the same offense, is constitutionally beyond the power of Congress to impose, not only *Blockburger* but at least the following cases would also have to be overruled: *Carter* v. *McClaughry,* 183 U. S. 365; *Morgan* v. *Devine,* 237 U. S. 632; *Albrecht* v. *United States,* 273 U. S. 1; *Pinkerton* v. *United States,* 328 U. S. 640; *American Tobacco Co.* v. *United States,* 328 U. S. 781; *United States* v. *Michener,* 331 U. S. 789; *Pereira* v. *United States,* 347 U. S. 1.

Suppose Congress, instead of enacting the three provisions before us, had passed an enactment substantially in this form: "Anyone who sells drugs except from the original stamped package and who sells such drugs not in pursuance of a written order of the person to whom the drug is sold, and who does so by way of facilitating the concealment and sale of drugs knowing the same to have been unlawfully imported, shall be sentenced to not less than fifteen years' imprisonment: *Provided, however,* That if he makes such sale in pursuance of a written order of the person to whom the drug is sold he shall be sentenced to only ten years' imprisonment: *Provided*

*further,* That if he sells such drugs in the original stamped package he shall also be sentenced to only ten years' imprisonment: *And provided further,* That if he sells such drugs in pursuance of a written order and from a stamped package, he shall be sentenced to only five years' imprisonment." Is it conceivable that such a statute would not be within the power of Congress? And is it rational to find such a statute constitutional but to strike down the *Blockburger* doctrine as violative of the double jeopardy clause?

In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, see Radzinowicz, A History of English Criminal Law: The Movement for Reform, 1750–1833, *passim,* these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given power to revise sentences, the power to increase as well as the power to reduce them. See 7 Edw. VII, c. 23, § 4 (3); 16 & 17 Geo. V, c. 15, § 2 (4). This Court has no such power.

*Affirmed.*

MR. CHIEF JUSTICE WARREN, dissenting.

The problem of multiple punishment is a vexing and recurring one. It arises in one of two broad contexts: (a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a

single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both proscriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a bank, though violative of two statutes, might warrant but a single punishment.

In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration. But this fact should not lead the judiciary, charged with the obligation of construing these statutes, to settle such questions by the easy application of stereotyped formulae. It is at the same time too easy and too arbitrary to apply a presumption for or against multiple punishment in all cases or even to do so one way in one class of cases and the other way in another. Placing a case in the category of unit-of-offense problems or the category of overlapping-statute problems may point up the issue, but it does not resolve it.

Where the legislature has failed to make its intention manifest, courts should proceed cautiously, remaining sensitive to the interests of defendant and society alike. All relevant criteria must be considered and the most useful aid will often be common sense. In this case I am persuaded, on the basis of the origins of the three statutes involved, the text and background of recent amendments to these statutes, the scale of punishments prescribed for second and third offenders, and the evident legislative purpose to achieve uniformity in sentences, that the present purpose of these statutes is to make sure that a prosecutor has three avenues by which to prosecute one who traffics in narcotics, and not to authorize three cumulative punishments for the defendant who consummates a single sale.

Mr. Justice Douglas, with whom Mr. Justice Black concurs, dissenting.

The first three counts of this indictment cover one sale of narcotics made on February 26, 1955. The one sale was broken down for purposes of the three counts into three crimes:

(1) petitioner made the sale "not in pursuance of a written order" which is contrary to the requirement of 68A Stat. 551, 26 U. S. C. (Supp. V) § 4705 (a);

(2) the narcotics were sold "not in the original stamped package" which is contrary to the requirements of 68A Stat. 550, 26 U. S. C. (Supp. V) § 4704 (a);

(3) petitioner "facilitated the concealment and sale" which is in violation of 65 Stat. 767, 21 U. S. C. § 174.

Another single sale, one made on February 28, 1955, was likewise broken down into three separate and distinct crimes.

Consecutive sentences were imposed for the three crimes resulting from the first sale. Sentences imposed for the three crimes resulting from the second sale were made to run concurrently with each other and with the sentences imposed for the three offenses resulting from the first sale.

Plainly, Congress defined three distinct crimes, giving the prosecutor on these facts a choice. But I do not think the courts were warranted in punishing petitioner three times for the same transaction. I realize that *Blockburger* v. *United States,* 284 U. S. 299, holds to the contrary. But I would overrule that case.

I find that course necessary because of my views on double jeopardy, recently expressed in *Hoag* v. *New Jersey,* 356 U. S. 464. And see *Ciucci* v. *Illinois,* 356

U. S. 571. Once a crucial issue is litigated in a criminal case that issue may not be the basis of another prosecution. Here the same sale is made to do service for three prosecutions. The different evidence test, which was adopted without much analysis by the Court in *Carter* v. *McClaughry,* 183 U. S. 365, 394–395 (cf. *Ex parte Nielsen,* 131 U. S. 176), would permit the practice. Yet I agree with Bishop: ". . . in principle, and by the better judicial view, while the legislature may pronounce as many combinations of things as it pleases criminal, resulting not unfrequently in a plurality of crimes in one transaction or even in one act, for any one of which there may be a conviction without regard to the others, it is, in the language of Cockburn, C. J., 'a fundamental rule of law that out of the same facts a series of charges shall not be preferred.' "* 1 Criminal Law (9th ed. 1923) § 1060. I think it is time that the Double Jeopardy Clause was liberally construed in light of its great historic purpose to protect the citizen from more than one trial for the same act.

That analysis was adopted by the Court in *Ballerini* v. *Aderholt,* 44 F. 2d 352, 353, a case close on its facts to the present one. There two counts were charged from one sale: (1) a sale without registration and payment of the tax and (2) a sale without requiring a written order. The court said:

> "The offense charged in each count was the unlawful sale of the same ounce of heroin. As there was but one sale, it would seem to follow that there was but one criminal act committed against the laws of the United States. The failure of appellant to register and pay the special tax, as charged in the first count, or to obtain a written order, as charged in the second count, could not have been the basis of a criminal

---

*Regina* v. *Elrington,* 9 Cox C. C. 86, 90, 1 B. & S. 688.

prosecution. It was only in the event of a sale that such failure could become material. At last it was the sale, and not the failure to register, pay the tax, or secure the written order, that constituted the offense."

Cf. Mr. Justice Rutledge concurring in *District of Columbia* v. *Buckley*, 75 U. S. App. D. C. 301, 305, 128 F. 2d 17, 21.

I would read the three present statutes from that approach. I would hold that the prosecutor was given the choice of one of three prosecutions for this single sale. I would resist a reading which inferred that Congress intended multiple offenses from the same sale, for that would not make the statutes square with the Constitution.

Mr. Justice Brennan, dissenting.

Even assuming the vitality of *Blockburger* v. *United States,* 284 U. S. 299, I must dissent from the disposition of this case. In *Blockburger* the Court held that multiple punishment might be imposed as the consequence of a single sale of narcotics, provided that separate statutory offenses were involved in the same transaction. In determining whether there were separate statutory offenses the Court said:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, *is whether each provision requires proof of a fact which the other does not.*" 284 U. S., at 304. (Emphasis added.)

The Court's decision today is inconsistent with the principles of *Blockburger* because it allows separate offenses to be proved and separate punishments to be imposed upon the proof of a single fact. The petitioner

has been convicted of a sale of narcotics "not from the original stamped package" in violation of 26 U. S. C. (Supp. V) § 4704 (a), and for having "facilitated the concealment and sale" of narcotics in violation of 21 U. S. C. § 174. But § 4704 (a) provides that "the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found" and § 174 provides that "whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Therefore under the statutes proof of the single fact of possession of unstamped narcotics suffices to convict the defendant of offenses under either § 4704 (a) or § 174. Since under *Blockburger* punishment under separate sections can be sustained only if "each provision requires proof of a fact which the other does not," 284 U. S., at 304, the decision of the court below should be reversed.