**UNITED STATES of America**

v.

**James Lee SUGGS and Clarence Blair.**

**Cr. No. 573–66.**

United States District Court
District of Columbia.

May 4, 1967.

---

Victor W. Caputy, Asst. U. S. Atty., Washington, D. C., for United States of America.

Dovey J. Roundtree, Washington, D. C., for defendant James Lee Suggs.

Floyd W. Anderson, Washington, D. C., for defendant Clarence Blair.

SIRICA, District Judge.

## MEMORANDUM OPINION

I have concluded, as a matter of law, that there is no prohibition against consecutive sentences for robbery and assault with a dangerous weapon where they took place in the same chain of events.

The Court of Appeals decision in Irby v. United States, No. 19,988 (March 15, 1967), is the closest authority to the contrary, and therefore, it will be distinguished from the instant case.

*First*: The Court of Appeals in *Irby* expressly based its decision on the statutory requirements for housebreaking, one of which is that there be a specific intent to commit some criminal offense (such as robbery as in the *Irby* case). The Court of Appeals said: "Housebreaking, by the terms of the statute, is committed in preparation for some other criminal offense which is intended at the time of entry."

■ Now with respect to robbery and assault with a dangerous weapon, there is no statutory requirement that the "force" or "putting in fear" element of robbery be by means of an assault with a dangerous weapon. The statutory requirements can be met even without any putting in fear or force such as by sudden or stealthy snatching. Similarly, there is no statutory requirement that the necessary elements of an assault with a dangerous weapon include a robbery or an intent to commit robbery. In the present case, there is no statutory requirement for either robbery or assault with a dangerous weapon, that there be a specific intent to commit the other.[1] In both *Irby* and Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), which was cited in *Irby*, there was a specific intent connection between the two offenses involved.

*Second*: The Court of Appeals in *Irby* made specific reference to the fact that Congress has provided different statutes with different sentences for unlawful entry (which is housebreaking without the element of a specific intent to commit crime therein), and housebreaking itself, for which "Congress has provided a much stiffer penalty."[2] With respect to the present case, Congress has not distinguished between robbery with and robbery without an assault with a dangerous weapon, except by providing two

---

1. Compare 22 D.C.Code § 2901 (1961) (robbery) with 22 D.C.Code § 502 (1961) (assault with a dangerous weapon).

2. Compare 22 D.C.Code § 3102 (1961) (unlawful entry) with 22 D.C.Code § 1801 (1961) (housebreaking).

special statutes. Under the first a defendant may be sentenced up to fifteen years for assault with intent to rob (22 D.C.Code § 501 (1961)) which requires neither a weapon nor a completed robbery, and under the second a defendant may be given an additional penalty for a crime of violence "when armed with or having readily available any pistol or other firearm." (22 D.C.Code § 3202 (1961)). There is nothing about either of these statutes which indicates to the Court that either or both of them are to be the exclusive means whereby heavier sentences may be imposed in cases of combined robbery and one or more assaults with a dangerous weapon—as opposed to a robbery without a weapon. On the contrary, the very existence of these statutes is clear indication to me that Congress intends and expects more severe penalties in cases of robberies committed with the aid of deadly weapons—especially firearms as in this case.

In this connection, the 1958 decision by the Supreme Court in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, lends support for the permissibility of consecutive sentences in the present case. In that case the petitioner had been given consecutive sentences involving violations of three separate narcotics statutes. The separate violations arose out of the same narcotics transaction. The Supreme Court affirmed the consecutive sentences.

■ Accordingly, it is my view that it is entirely proper to increase the punishment where there have been convictions under the conventional robbery statute *and* under the statute prohibiting assaults with a dangerous weapon by imposing consecutive sentences.

■ *Third:* Wholly apart from the statutory considerations, I think the evidence is clear that the three separate assaults with a dangerous weapon for which the defendant Suggs has been convicted were separated by both time and distance from the actual robbery. The evidence shows that the assaults took place either in the parking lot of the store or near the door to the store—whereas the robbery took place in the office of the store after three of the four robbers marched the store personnel back into the store. Had the criminal venture been interrupted during the entry into the store, the assaults with a dangerous weapon would nevertheless have already been completed.

For the foregoing reasons the Court. finds no legal or statutory prohibition against consecutive sentences in this kind of case. Of course, the particular affirmative reasons why consecutive sentences might or might not be imposed in any given case is a matter within the discretion of the sentencing judge based upon factual considerations. These considerations are irrelevant to the present discussion which is limited to whether consecutive sentences are permissible in a case such as the present one, not whether they *should* be imposed.

## APPENDIX

### STATEMENTS BY THE COURT AT SENTENCE HEARING ON MAY 4, 1967

After counsel for the defendant Suggs made a statement on behalf of the defendant, and after the defendant himself indicated that he did not desire to speak in his own behalf, the Court made the following statement:

"Now the Court remembers the evidence in this case very well and I have carefully considered the presentence report on each defendant prepared by the Probation Office. Before imposing sentence, however, I am going to indicate some of the unusual facts about the offenses committed by the defendant Suggs—for which a jury has convicted him—which prompt me *not* to exercise leniency in his case. What I am about. to say will indicate why I have determined that he must be separated from society for a long time.

"Before imposing sentence, I always review the facts in the case. In that connection, the Court remembers very well the evidence which indicates that this armed robbery was planned. This was a

premeditated scheme, complete with prior "casing" of the store by the defendant Blair; a get-away car; a look-out man; masks; rubber gloves; and most important, loaded weapons, which were used not only during the robbery to intimidate the victims and threaten their lives, but also actually fired, by at least one of the four men involved, during their unsuccessful get away.

"Another important aspect of this robbery was the large amount of money which was taken—approximately twenty-four thousand dollars. The elements of planning and premeditation and the amount of money taken are at least three indications, and others will be mentioned later, that the robbery was not the product of amateurs. It was a professional job—and which was almost successful.

"The seriousness of the episode was not complete, however, when the four men left the store. After leaving the store the men began their get-away in a red Thunderbird. Very shortly after they ran from the store, the police were notified by one of the victims and a police scout car, within minutes, observed the red Thunderbird and followed it, with other police vehicles joining in the pursuit. What followed can properly be described as one of the wildest and most dangerous police chases in the history of the District of Columbia. The chase took place in crowded traffic during the evening rush hour on a working day. During the chase the get-away car developed speeds of from 60 to 80 miles per hour or more on residential streets; it proceeded the wrong way south on 13th Street, N.W. for a considerable distance, and failed to obey traffic signals. Toward the end of the chase there were several police vehicles following the Thunderbird and others closing in upon the area. The car finally came to a rolling stop and its four occupants departed on the run—two going one way and two going the other way—with policemen in hot pursuit. The two defendants in this case were apprehended almost immediately, but at the same time they were being arrested, one of the other men was making a successful escape and the fourth man had entered a private home (according to the presentence report), intimidated, assaulted and threatened the lives of a man and his wife with his weapon, and fired at the police officers outside the house. The saddest and most serious part of this whole episode then occurred. This fourth fugitive fatally wounded Private Marvin Lee Stocker and then killed himself.

"These two defendants ought to be grateful that they were not indicted and tried for first-degree murder for the slaying of the police officer under the felony murder rule.

"Now in addition to my consideration of the nature of the criminal venture, I also consider the personal character, habits and background of a defendant when I impose sentence. In that connection I carefully study the presentence report in each case. One of the most striking facts about the defendant Suggs is that he is not a poverty-stricken, ignorant, unemployable social outcast who turned to crime for survival. On the contrary, he is a man of average intelligence, he finished the eleventh grade, he was an outstanding athlete in high school, he is married with one child and his wife has a good job, he has a nice apartment and apparently most of the comforts of life—perhaps more than his income would warrant. These factors are further indications that he is not the type of person who is driven to impulsive criminal activity; rather, he is a person who plans, waits for circumstances and timing to his advantage, and then executes his criminal venture in a professional manner.

"When Suggs was arrested he had more than $600 in his possession. He also owns a 1965 Cadillac convertible and claims substantial income of his own as a self-employed wig salesman up until his arrest in this case. One final aspect of his financial resources—whether lawful or not, I don't know—is that while on bond in this case and on January 20, 1967, his wife presented $15,000 in cash as a bond for his release after his

arrest for an armed robbery in Maryland.

"In summary then, this Court can show no leniency for the defendant Suggs, not only because of the nature and circumstances of the crimes for which he has been convicted in this case, but also because he shows a well developed criminal mind bent upon sustaining himself at the expense of the security and safety of others.

█ "In addition to the nature of the case and personal characteristics of a defendant, the Court must also keep in mind, when imposing sentence, the real purposes of sentences: that is, rehabilitation, punishment and deterrence. As to rehabilitation, I have concluded that the defendant Suggs cannot be rehabilitated quickly or easily. The element of punishment in this case is one which should fit the gravity of the crimes—and I have already indicated how I feel about that.

"In this case, I sincerely believe the deterrent effect this sentence may have on others is the most important factor for me to consider. Unless other persons who contemplate criminal activity of this nature are *assured and know* that they will receive substantial punishment if they are apprehended and convicted, our present system of sentencing in criminal cases will be rendered ineffective.

"Swift detection and apprehension, prompt prosecution, and proper and certain punishment are tested crime deterrents.

"As one State Supreme Court Justice recently stated, and I agree with him, 'It is completely unrealistic to say that punishment is not a deterrent to crime.' He also stated that 'It is simply contrary to human nature not to be deterred from a course of action by the threat of punishment.'

"I think the deterrent effect this sentence might have on others is all the more important in this case because from the information I have available to me, the defendant Suggs has apparently been making a name for himself among the youthful underworld in the metropolitan area and is looked upon with awe and admiration by this youthful criminal element. I would hope that the sentence imposed in this case will inspire at least an equal amount of awe in the eyes of this element causing them to think seriously before embarking upon any criminal venture.

"Now does counsel or the defendant have anything further to say before sentence is imposed?"

[Counsel corrected the Court on the amount of cash posted by the defendant's wife on January 20, 1967. Counsel stated that only $1,500 cash was deposited with a bondsman as a premium on a $15,000 bond.]

"In Criminal Case No. 573–66 the Court sentences the defendant, James Lee Suggs, as follows: On count one, upon which the defendant has been convicted of robbery, the Court sentences the defendant to a term of not less than 5 years nor more than 15 years in an institution to be designated by the Attorney General or his authorized representative; on counts two, three and four, upon each of which the defendant has been convicted of assault with a dangerous weapon, the Court sentences the defendant on each count to a term of not less than 40 months nor more than 10 years in an institution to be designated by the Attorney General or his authorized representative; on count five, upon which the defendant has been convicted of carrying a dangerous weapon, the Court sentences the defendant to a term of 12 months in an institution to be designated by the Attorney General or his authorized representative to run concurrently with the sentences imposed under counts one through four. The sentences imposed on counts two, three and four will run consecutively with one another and consecutively with the sentence imposed on count one. In other words, you will serve the equivalent of a sentence of 15 years to 45 years.

"Mr. Suggs, you are advised that you have a right to appeal, and if you are un-

able to pay the cost of an appeal, you have the right to apply for leave to appeal in forma pauperis; that is, without prepayment of costs. If the defendant so requests, the Clerk of the Court shall prepare and file forthwith a notice of appeal on behalf of the defendant. As you probably know, you have only ten days from this date to file your notice of appeal.

"Mrs. Roundtree, I trust that you have explained, or that you will explain, the appeal procedure to your client and that you will represent him in connection with whatever needs to be done in this Court for purposes of any appeal which he desires.

"I will not set an appeal bond in this case because I think that there is a substantial risk that the defendant would flee this jurisdiction. The risk of flight is due not only to the substantial sentence which has been imposed in this case, but also because approximately $34,000 might be available to him which was allegedly stolen on November 1, 1966, from a Federal Credit Union and for which the defendant Suggs has been indicted in this Court. In addition to this pending robbery indictment in Criminal Case No. 11–67, the presentence report indicates that the defendant Suggs is also charged in Criminal Case No. 284–67 with unauthorized use of a vehicle and interstate transportation of a stolen motor vehicle. Finally, I have information that he is also presently charged with armed robbery in Maryland. All of these pending charges are based upon alleged offenses committed while the defendant Suggs was on pre-trial bond in this case; on the basis of these and other factors, I believe that he would be a real danger to the community if released pending appeal."

\*   \*   \*   \*   \*   \*

After counsel for the defendant Blair made a statement on behalf of the defendant, and after the defendant himself indicated that he did not desire to speak in his own behalf, the Court made the following statement:

"Now most of what I said before I sentenced your co-defendant applies to your situation, especially what I had to say about the nature of this criminal venture, and about what factors I considered in imposing sentence—especially the deterrent effect of a substantial sentence.

"Now in your own case, Mr. Blair, you were convicted only of participating in the robbery. I think both you and your co-defendant in this case should understand that had you been convicted on all counts as was your co-defendant, there would have been very little, if any, difference between his sentence and your sentence.

"Although you have not been convicted on all the counts in the indictment, I am satisfied that you also participated in the planning and preparation for this robbery, and in that connection you displayed the same criminal propensities as your co-defendant. I think leniency sometimes should be shown in cases where, because of regrettable personal circumstances, a crime is committed impulsively or in the heat of passion and without much thought as to adverse personal consequences or the effects upon others including the victims of a crime. This is not such a case. Any criminal venture which was calculated and executed as professionally as this one requires a substantial sentence. You have no excuse, not even a weak one, for your part in this robbery. You completed ten years of education, are capable of steady employment, you owned a fairly late model Cadillac, and you come from a good, hard-working and law-abiding family. In my judgment your participation in this robbery and your association with three others who were armed—one of whom killed a policeman and himself—does not recommend leniency for you.

"Now before I impose sentence, does counsel or the defendant have anything further to say?"

[No further statements were made]

"In Criminal Case No. 573–66, the Court sentences the defendant, Clarence

Blair on count one, upon which he has been convicted of robbery, to a term of not less than 5 years nor more than 15 years in an institution to be designated by the Attorney General or his authorized representative.

"Mr. Blair, you are advised that you have a right to appeal, and if you are unable to pay the costs of an appeal, you have the right to apply for leave to appeal in forma pauperis; that is, without prepayment of costs. If the defendant so requests, the Clerk of the Court shall prepare and file forthwith a notice of appeal on behalf of the defendant. As you probably know, you have only ten days from this date to file your notice of appeal.

"Mr. Anderson, I trust that you have explained, or that you will explain, the appeal procedure to the defendant Blair and that you will represent the defendant for whatever needs to be done in this Court for purposes of any appeal which your client desires.

"I will not set an appeal bond in this case because I think the defendant Blair is a danger to the community, and that there is a likely risk the defendant would flee because of the substantial sentence which has been imposed."