**UNITED STATES of America**

v.

**POCONO INTERNATIONAL CORPORA-TION and Charles Goldberg,
Defendants.**

No. 73 Cr. 630.

United States District Court,
S. D. New York.

June 3, 1974.

Elliot A. Taikeff, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., by Bart M. Schwartz, Anne Sidamon-Eristoff, Asst. U. S. Attys., for defendants.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendants Pocono International Corporation ("Pocono") and Charles Goldberg, chief operating officer of Pocono, are charged in a forty-two count indictment with violations of 18 U.S.C. § 1341 (mail fraud) and 15 U.S.C. § 1703(a)(2)(B) (fraudulent interstate land sales). Defendants are charged with knowing and wilfull participation in an illegal scheme to defraud purchasers of land owned by Pocono. Fifteen purchasers are named in the indictment.

The indictment alleges that the defendants sold land in a development known

**1266**

as Hickory Run Forest in the Pocono, Pennsylvania Forest Township, Carbon County, Pennsylvania, representing to prospective purchasers that the property was suitable for homesites, that "conventional" septic tank systems to dispose of human and household wastes could be installed on each homesite and that such sewage facilities would be approved by local township officials. The Government contends that at the time these representations were made, defendants knew most of the homesites were not suitable for conventional septic tank systems, and instead, other kinds of systems, far exceeding the conventional type in cost would have to be installed, and approval for these would have to be obtained from officials of the State of Pennsylvania. It is claimed certain purchasers relied thereon and parted with a valuable consideration, to their detriment.

The false representations were allegedly made orally to prospective buyers and contained in "Statements of Record" and "Property Reports" filed with the Department of Housing and Urban Development pursuant to 15 U.S.C. § 1701 et seq. The provisions of 15 U.S.C. § 1703 require that the "Property Reports" be furnished to prospective buyers, and defendants are charged with having failed to comply with this section. Defendants are alleged to have carried out sales promotions and related activities via radio, television, newspapers and telephone solicitations through an agent, SellAmerica, Ltd., of which defendant Goldberg was Vice President.

Defendants have moved to require the Government to make a pre-trial election to prosecute them either under the general mail fraud statute or under the land sale fraud statute, on the ground that the indictment is multiplicitous in that Counts 1 through 15, inclusive, which charge defendants with using the mails to further the alleged fraud, are duplicated by other counts of the indictment,[1] which allege that mailings were made to the same fifteen purchasers between July 18, 1972 and February 26, 1973, along with other acts done in furtherance of the scheme, in violation of the Land Sales Act.

Defendants' theory is that they are being charged, as a result of each single incident of use of the mails, with a violation of two statutes. Defendants acknowledge that a single act may constitute a violation of more than one penal provision, but contend correctly, that under applicable case law this is so only where the two different statutes are aimed at preventing distinct evils, and there is at least one additional element or fact to be proven under the two statutes. They urge that this is not such a case. We disagree.

■ We have been cited to no case, nor have we found any in this Circuit or elsewhere, dealing with an indictment charging violations of the general fraud statute and the Interstate Land Sales Act fraud provisions. It is clear, however, that a single indictment which initially charges defendants with multiple offenses may be proper and result in convictions for multiple offenses, all arising out of the same transaction. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that one sale of narcotics can result in conviction of two separate offenses under the Narcotics Act.

The test to be applied to determine the propriety of a multiple conviction was stated as follows (284 U.S. at 304, 52 S.Ct. at 182):

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

1. These counts are: 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 40, 41 and 42.

The same issue was before the Supreme Court in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), in which defendant was convicted of violating provisions of the Internal Revenue Code and the Narcotic Drugs Import and Export Act by a single narcotics sale. Citing *Blockburger, supra,* the Court upheld the convictions (357 U.S. at 389, 78 S.Ct. at 1283):

"The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat, does not make the several different regulatory controls single and identic."

In his dissent, Mr. Justice Brennan observed that the decision was not consistent with *Blockburger,*

"because it allows separate offenses to be proved . . . upon the proof of a single fact. . . . [U]nder the statutes proof of the single fact of possession of unstamped narcotics suffices to convict . . . under either § 4704(a) or § 174. Since under *Blockburger* punishment under separate sections can be sustained only if 'each provision requires proof of a fact which the other does not,' 284 U.S., at 304 [52 S.Ct. 180 at page 182], the decision of the court below should be reversed." [357 U.S. at 397–398, 78 S.Ct. at 1287]

As will be discussed below, the instant case satisfies this minimal requirement and more.

The Court in *Gore* distinguished Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) on which defendants rely. *Bell* held that transporting more than one woman at one time constituted a single violation of the Mann Act. The majority in *Gore* stated (357 U.S. at 391, 78 S.Ct. at 1284):

"It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics."

The two statutes under which these defendants are being prosecuted were passed at different times and are aimed at "throttling" fraud. See *Gore, supra,* p. 391, 78 S.Ct. 1280. The first statute is aimed against fraud of any kind; the second interdicts fraud solely in the sale of land. Statutory predecessors of 18 U.S.C. § 1341, and revisions made thereto for more than a century, reflect no intent to change the substantive provisions of the crime of mail fraud. (See the legislative history of the 1949 revisions, 1949 U.S.Code Cong. Service, p. 1948). The sole purpose of that statute has always been to prevent the post office from being used to carry out any scheme to defraud. See Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896); Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

The Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq., on the other hand, is a comprehensive statutory plan for the regulation of land sales to the public, in which is included authorization for individual civil suits, sections requiring supervision by and disclosure to the Department of Housing and Urban Development, as well as sections imposing criminal penalties for violations of duties imposed by the Act, and fraud. (See the legislative history of the Act at 1968 U.S.Code Cong. and Adm.News, p. 2873).

The similarities between the Land Sales Act and the federal securities laws are obvious, both are designed to protect purchasers through regulation, disclosure and criminal sanctions. It was

long ago held that the securities laws did not so cover the field of use of the mails to defraud as to repeal by implication 18 U.S.C. § 1341 [former § 338]. See United States v. Rollnick, 91 F.2d 911 (2d Cir. 1937). Nor can it be urged that the Land Sales Act does so.

Mr. Chief Justice Burger recently commented:

"Although inadequate to protect the buying and investing public fully, the mail fraud statute stood in the breach against frauds connected with the burgeoning sale of undeveloped real estate, until Congress could examine the problems of the land sales industry and pass into law the Interstate Land Sales Full Disclosure Act . . . . * * * The mail fraud statute continues to remain an important tool in prosecuting frauds in those areas where legislation has been passed more directly addressing the fraudulent conduct. Mail fraud counts fill pages of securities fraud indictments even today . . . . Despite the pervasive government regulation of the drug industry, postal fraud statutes still play an important role in controlling the solicitation of mail-order purchases by drug distributors based upon fraudulent misrepresentations." United States v. Maze, 414 U.S. 395, 406, 94 S.Ct. 645, 651, 38 L.Ed.2d 603, 612 (1974), dissenting opinion.

The majority in *Maze* overturned a conviction under the mail fraud statute while upholding a conviction under the Dyer Act, combined in a single indictment. Defendant, in a cross-country escapade, had stolen an automobile and credit cards from the same victim. The fraud conviction was reversed on the ground that statutory requirements of 18 U.S.C. § 1341 had not been met because use of the mails must be an integral part of the scheme. In *Maze*, defendant had obtained the money or goods and completed the scheme before the stores or banks involved had mailed anything. The Court did not decide whether the existence of a recent law specifically outlawing credit card fraud (15 U.S.C. § 1644, Truth-in-Lending Act) was intended by Congress to be the sole vehicle for federal prosecution of credit card frauds (see 414 U.S. p. 404, 94 S.Ct. p. 650, 38 L.Ed.2d, footnote 9, p. 610). In view of Mr. Justice Burger's opinion, and the long history of combined prosecutions under the general fraud statute and the securities laws, an indictment cast in the form presented here is proper.

Subjecting the indictment to the *Blockburger* and *Gore, supra,* tests, there is no question that the Government will have different proof requirements. To secure a conviction under the Land Sales Act, the Government must prove that each purchaser relied on the false statements and was damaged. Not only is a showing of reliance not required under 18 U.S.C. § 1341, but the Government need not show that anyone was damaged, nor that anyone was actually defrauded:

"The great weight of authority is to the effect that in prosecutions for mail fraud or wire fraud it is not essential that the Government allege or prove that purchasers were in fact defrauded." United States v. Andreadis, 366 F.2d 423 (2d Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541.

In addition, every mailing is a separate offense under 18 U.S.C. § 1341 (see United States v. Eskow, 422 F.2d 1060 (2d Cir. 1970), cert. denied, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544) and the Government, to sustain its burden of proof on each individual general mail fraud count, must prove each individual mailing. Since proof of the use of any other instrumentality of interstate commerce will suffice under the Land Sales Act, the Government need not prove use of the mails at all.

We reject the Government's contention that the Land Sales Act counts "may be included within the broader mail fraud counts" (Government's Brief, p. 9) by analogy to cases in which a defendant is charged with violations of 18 U.S.C. § 201(b) (bribery) and 201 (f) (gratuity), and "both charges are submitted to the jury" in connection with a single payment to a federal official. This Circuit has decided that § 201(f) is a lesser included offense of § 201(b), and the Government cannot submit both counts to the jury unless there is a disputed factual element on which the jury could decide the defendant is guilty of the lesser but not the greater offense. The only element that differs in these two sections is that bribery requires a specific intent to influence official action and the giving of a gratuity does not. United States v. Harary, 457 F.2d 471 (2d Cir. 1971). For the reasons previously stated, violations of the Land Sales Act are not lesser included offenses of the general mail fraud statute.

Whether there is multiplicity ordinarily cannot finally be determined prior to trial. Defendants' motion may well be premature. The Supreme Court has said:

"Whether an aggregate of acts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial on the facts." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952).

Defendants' claim of prejudice in presenting such a large number of counts to the jury is overcome by the fact that there is now no multiplicity apparent.

Defendants' motion is denied without prejudice to renew during the trial.

So ordered.