**UNITED STATES of America, Appellee,**

v.

**Robert Lee WRIGHT, Jr., Appellant.**

**No. 78–1098.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 24, 1978.

Decided July 28, 1978.

Rehearing Denied Aug. 28, 1978.

W. H. Gilliam, Gottschalk, Patterson & Gilliam, Waterloo, Iowa, on brief, for appellant.

Robert Lee Wright, Jr., pro se.

. James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, on brief, for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Robert Lee Wright, Jr. was convicted by a jury in federal district court [1] on all five counts of an indictment charging him with (I) receipt of a firearm which had been transported in interstate commerce, having previously been convicted of a felony, in violation of 18 U.S.C. § 922(h); (II) possession and transportation of a firearm in and affecting commerce, having been previously convicted of a felony, in violation of 18 U.S.C.App. § 1202(a); (III) receipt and possession of a sawed-off shotgun, said weapon having been transferred in violation of 26 U.S.C. §§ 5811, 5812, all in violation of 26 U.S.C. §§ 5861(b), 5871; (IV) receipt and possession of a sawed-off shotgun, said firearm having been made in violation of 26 U.S.C. §§ 5821, 5822, all in violation of 26 U.S.C. §§ 5861(c), 5871; and (V) receipt and possession of a sawed-off shotgun which had not been registered, in violation of 26 U.S.C. §§ 5861(d), 5871. These charges

1. The Honorable Edward J. McManus, Chief United States District Judge for the Northern District of Iowa.

arise from Wright's possession of a single sawed-off Stevens Model 940E .20 gauge shotgun. The weapon was found in a Lincoln Continental being driven by Wright after the car was stopped by Waterloo, Iowa police officers who were investigating an armed robbery.

Prior to trial, Wright moved to suppress the testimony of the police officers and any contraband or evidence seized by them prior to, during, or subsequent to his arrest. In his motion, he contended that there were no reasonable grounds for stopping him and that there was no probable cause for seizure of the weapon. The motion was denied and Wright filed a motion to reconsider. Following the jury's verdict of guilty, the district court reconsidered its denial of the motion to suppress, reversed its previous position thereon, and granted Wright's motion for judgment of acquittal. The United States appealed. After examining the fourth amendment question in detail, a panel of this court vacated the district court's order granting Wright's motion to suppress and his motion for judgment of acquittal, reversed the judgment of acquittal, reinstated the jury's verdict, and remanded the case for sentencing. *United States v. Wright*, 565 F.2d 486 (8th Cir. 1977), *cert. denied*, 435 U.S. 974, 98 S.Ct. 1621, 56 L.Ed.2d 67 (1978).

On remand, the district court sentenced Wright to five years on Count I, two years on Count II to run consecutively to the term on Count I, and to three ten year terms on Counts III-V to run concurrently with each other, but consecutively to the sentences imposed on Counts I and II. After sentencing, Wright took this timely appeal. Two issues are presented for resolution.

First, the sole issue raised in the brief filed by Wright's attorney is that the motion to suppress should have been granted for the same reasons previously found unpersuasive by this court. Our prior decision constitutes the law of the case and relitigation of this issue is precluded.

Second, Wright has filed a pro se brief on appeal, in which he contends that it is impermissible to impose consecutive sentences for a violation of 18 U.S.C. § 922(h) and a violation of 26 U.S.C. § 5861(b), (c) and (d), when those violations arise from a common factual basis, because of a congressional intent that these crimes not be cumulatively punished.[2] Although we are of the opinion that Wright's contention is without merit, it does require some brief discussion.

Wright does not contend that cumulative punishment under 18 U.S.C. § 922 and 26 U.S.C. § 5861 violates double jeopardy protections. Any such argument would be unpersuasive in view of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Court held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. Under the *Blockburger* test, there can be no doubt that 18 U.S.C. § 922(h) creates an offense separate and distinct from those defined in 26 U.S.C. § 5861(b), (c) and (d).

As the Supreme Court has recently noted, however, there may be instances where Congress, although constitutionally free to impose cumulative punishments under the *Blockburger* test, may have expressed its intention not to do so. *See Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978). It is to this proposition that Wright's argument is directed. His contention, in essence, is that both 18 U.S.C. § 922 and 26 U.S.C. § 5861 were enacted for the purpose of keeping firearms out of the hands of the "gangster" element. From this same "general deterrence," Wright would have us conclude that Congress did not intend to allow cumulative punishment for violations of these two statutes.

---

2. Wright does not challenge any other aspects of his sentence, and we express no views thereon.

We find Wright's contention to be without merit. We have examined, in detail, the legislative history of these statutes and we are unable to find any indication that Congress intended to prohibit cumulative punishment for violations of 18 U.S.C. § 922 and 26 U.S.C. § 5861. The present case is thus readily distinguishable from *Simpson v. United States, supra,* and *United States v. Eagle,* 539 F.2d 1166 (8th Cir. 1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977), where the legislative history disclosed an affirmative congressional intent to prohibit cumulative punishment.[3]

Absent an affirmative expression of legislative intent, our decision is guided by the principles expressed in *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). In *Gore,* the defendant was convicted of six separate statutory violations, arising from two sales of drugs. Each sale was held to have violated three statutes: (1) sale of drugs not in pursuance of a written order of the purchaser, in violation of § 4705(a) of the Internal Revenue Code of 1954; (2) sales and distribution of drugs not in the original stamped package, in violation of § 4704(a) of the Internal Revenue Code of 1954; and (3) facilitating concealment and sale of drugs with knowledge that the drugs had been unlawfully imported, in violation of § 2(c) of the Narcotic Drugs Import and Export Act. The Court affirmed the convictions on the basis of *Blockburger.* Writing for the Court, Mr. Justice Frankfurter said:

We are strongly urged to reconsider *Blockburger* by reading the various specific enactments of Congress as reflecting a unitary congressional purpose to outlaw nonmedicinal sales of narcotics. From this the conclusion is sought to be drawn that since Congress had only a single purpose, no matter how numerous the violations by an offender, of the specific means for dealing with this unitary purpose, the desire should be attributed to Congress to punish only as for a single offense when these multiple infractions are committed through a single sale. We agree with the starting point, but it leads us to the opposite conclusion. Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter. The three penal laws for which petitioner was convicted have different origins both in time and in design. * * * It seems more daring than convincing to suggest that three different enactments, each relating to a separate way of closing in on illicit distribution of narcotics, passed at three different periods, for each of which a separate punishment was declared by Congress, somehow or other ought to have carried with them an implied indication by Congress that if all these three different restrictions were disregarded but, forsooth, in the course of one transaction, the defendant should be treated as though he committed only one of these offenses.

357 U.S. at 390–91, 78 S.Ct. at 1283.

We find that rationale equally compelling in this case. Congress, by enacting the statutes in question over a period of thirty

---

3. Nor is appellant's position supported by *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), or other similar cases interpreting the federal bank robbery statute, 18 U.S.C. § 2113, as prohibiting cumulative punishment for violations of its various subsections. Unlike the bank robbery statute, the firearms statutes in question here do not subdivide firearms offenses into a cohesive series of steps displaying a continuum of increasingly serious criminal conduct with increasing penalties for each more aggravated offense. Rather they are a collection of distinct acts, each of which is declared to be unlawful. In such circumstances, separate offenses may arise out of the same act, so long as each offense requires proof of a fact which the other does not. *See United States v. Gardner,* 579 F.2d 474 at 476–477 (8th Cir. 1978).

years,[4] has unmistakably indicated its intention to "turn the screw" in an attempt to halt the proliferation of dangerous weapons in this country.

In conclusion, we find that imposing consecutive sentences for violations of 18 U.S.C. § 922(h) and 26 U.S.C. § 5861(b), (c) and (d) is not barred by either applicable double jeopardy principles or any statutory construction based on congressional intent. Accordingly, the judgment of conviction is affirmed.

---

4. The provision outlawing receipt of firearms by convicted felons, now codified at 18 U.S.C. § 922(h)(1) had its origin in 1938. *See* 52 Stat. 1250 (prohibiting receipt by person convicted of a "crime of violence"), *as amended,* 75 Stat. 757 (1961) (extending prohibition to persons convicted of any crime punishable by a term exceeding one year). Subsections (b) and (d) of 26 U.S.C. § 5861 originated in 26 U.S.C. §§ 5851, 5854 (1958). Subsection (c) was added by the Gun Control Act of 1968, 82 Stat. 1213, 1234.