[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13859
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00152-MMH-MCR-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHIRLEY M. STRELSKI,

Defendant-Appellant.


_____

No. 12-13860
Non-Argument Calendar
_____

D.C. Docket No.  3:11-cr-00152-MMH-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN T. STRELSKI,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 23, 2013)

Before CARNES, PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Shirley and Bryan Strelski appeal the district court's sentence ordering them to forfeit $140,630, the total amount involved in the structuring crimes they committed.  They contend that the forfeiture order violates the Excessive Fines Clause of the Eighth Amendment.

I.

Shirley and Bryan Strelski each pleaded guilty to one count of conspiring to structure financial transactions, in violation of 18 U.S.C. § 371, and one count of structuring financial transactions, in violation of 31 U.S.C. § 5324(a)(3).  In April and May of 2009, the Strelskis made 19 cash deposits totaling $158,130 at three

2

different banks.  The amount of each deposit ranged from $800 to $9,900.  The Strelskis later admitted that they made deposits that were less than $10,000 to avoid having to report the deposits to the Internal Revenue Service under 31 U.S.C. § 5313(a).  The Strelskis used those structured funds to purchase a house in Glendale, Arizona.

The presentence investigation reports for both Shirley and Bryan calculated a total offense level of 15, which included a 1-level reduction for acceptance of responsibility, and a criminal history category of I, resulting in a guidelines range of 18 to 24 months imprisonment.  The applicable fine range under United States Sentencing Guideline § 5E1.2(c)(3) was $4,000 to $40,000 for each of the Strelskis.

Before sentencing, the government filed motions asking the court to enter a personal money judgment in the amount of $158,130 against the Strelskis. The government also filed motions for a preliminary order of forfeiture of the Strelskis' house in Arizona, asserting that upon entry of the order of forfeiture, it would sell the property and use the proceeds to partially satisfy the requested money judgment.  The Strelskis objected to the total amount that was alleged to have been involved in the structuring offense, arguing that several of the deposits were legitimate business deposits.

At the sentence hearing, the district court sustained the Strelskis' objection in part, eliminating two deposits from the total amount of the structured funds, which resulted in a new total of $140,630.  The government informed the court that it would not seek the extra, one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  As a result, the Strelskis' total offense level became 16, resulting in a guidelines range of 21 to 27 months imprisonment and a fine range of $5,000 to $50,000 for each of the Strelskis.  The government also clarified that it was seeking forfeiture of the Arizona property as an alternative remedy to the personal money judgment, and that if the Strelskis satisfied the entire personal money judgment, it would not proceed with the forfeiture of the property.

The district court then granted in part the government's motion for entry of a personal money judgment, amending the total forfeiture amount to $140,630.  The court also granted the government's motion for entry of a preliminary order of forfeiture of the Arizona property.  The court rejected the Strelskis' argument that the forfeiture of $140,630 violates the Excessive Fines Clause of the Eighth Amendment, reasoning that it couldn't "find support in the case law" for that conclusion.  Even though the Strelskis had guidelines ranges of 21 to 27 months imprisonment, the district court decided that no incarceration was necessary and sentenced the Strelskis to a 3-year term of probation.  The court reasoned that the forfeiture and probation reflected the seriousness of the crimes and would

4

adequately deter the Strekskis and the general public from committing structuring crimes. This is the Strelskis' appeal.

## II.

When a defendant is convicted of structuring financial transactions under 31 U.S.C. § 5324, the sentencing court "shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto." 31 U.S.C. § 5317(c)(1)(A). Because the forfeiture required in structuring cases constitutes a punishment, it is subject to the Eighth Amendment's prohibition against excessive fines. See United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007); see also United States v. Bajakajian, 524 U.S. 321, 328, 118 S.Ct. 2028, 2033 (1998). A forfeiture violates the Eighth Amendment "if it is grossly disproportional to the gravity of a defendant's offense." Bajakajian, 524 U.S. at 334, 118 S.Ct. at 2036. We review de novo the district court's conclusion that a fine is not constitutionally excessive. Id. at 336 n.10, 118 S.Ct. at 2037 n.10.

"Translating the gravity of a crime into monetary terms — such that it can be proportioned to the value of forfeited property — is not a simple task." United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir. 1999). "Fortunately for us, this task has already been performed by two very competent bodies." Id. The first is Congress, and the second is the United States Sentencing Commission. Id. at 1309–10. Accordingly, "if the value of forfeited

property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." Id. at 1309.  And because the sentencing guidelines "proportion punishments to crimes with even greater precision than criminal legislation," "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive." Id. at 1310.  Because the issue is whether the punishment is proportionate to the crime, it follows that the less incarceration imposed, the higher a forfeiture can be for a given crime.  Here the sentence did not include any incarceration.

The maximum fine authorized by Congress for the Strelskis' offenses is $250,000 per count.  See 18 U.S.C. § 3571.  Because the Strelskis each pleaded guilty to one count of structuring and one count of conspiring to structure, they faced a combined maximum fine of $1,000,000.  Because the amount the Strelskis were required to forfeit — a total of $140,630 — is well below the $1,000,000 statutory maximum, there is a strong presumption that the forfeiture is constitutional. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d at 1309.  The maximum fine authorized for the Strelskis under the sentencing guidelines is $50,000 each, resulting in a combined total fine of $100,000.  Although the forfeiture amount exceeds the maximum fine under the guidelines, it is still "near the permissible range of fines under the sentencing guidelines," which means that

it is almost certainly not excessive.  See United States v. 427 & 429 Hall St., 74 F.3d 1165, 1172–73 (11th Cir. 1996) (holding that forfeiture of property valued at $65,000 was not excessive where the maximum fine under the sentencing guidelines was $40,000).

The Strelskis contend that the fine is constitutionally excessive because, like the defendant's crime in Bajakajian, their crime was "purely a reporting offense." In Bajakajian, the Supreme Court held that the $357,144 forfeiture sought by the government was grossly disproportional to the gravity of the defendant's offense of failing to report that he was transporting more than $10,000 outside the United States.  524 U.S. at 325, 339–40, 118 S.Ct. at 2032, 2039.  The Supreme Court reasoned that the forfeiture would be grossly disproportional to the crime because that crime was solely a reporting offense that was unrelated to other illegal activities, the maximum fine authorized by Congress was $5000, and the harm caused to the government was minimal.  Id. at 338–339, 118 S.Ct. at 2038–39.

We disagree with the Strelskis that their crime was "purely a reporting offense."  Unlike the defendant in Bajakajian who committed a one-time reporting offense, the Strelskis made 19 separate deposits at three separate banks over the course of two months in an attempt to avoid the Internal Revenue Service's reporting requirements.  And unlike the crime in Bajakajian, which carried a maximum statutory fine of $5,000, the crimes in this case carry a maximum

7

statutory penalty of $250,000 for each count, which further suggests that the Strekskis' structuring crimes were more serious than the reporting offense in Bajakajian.

The Strelskis also argue that they "do not fit into the class of persons the statute was intended to target," presumably because "the funds were not related to any illegal activity." While it is true that the Strelskis were not convicted of any other crimes in connection with their structuring offenses, they nonetheless violated the law. The fact that they were not convicted of any other crimes is not enough to overcome the strong presumption that the forfeiture was constitutional because it was within the range of fines prescribed by Congress.

The Strelskis further argue that the forfeiture is grossly disproportional to their crime because the harm to the government was minimal: the government was deprived only of the information that the Strelskis were depositing a large sum of money into their bank accounts. "[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." Bajakajian, 524 U.S. at 336, 118 S.Ct. at 2037. As we have already noted, Congress has determined that the structuring offenses in this case warrant a $250,000 maximum fine for each count, and the Sentencing Commission has determined that the those same offenses warrant a $50,000 fine and 21 to 27 months imprisonment. The punishments selected by the legislature show that it considers structuring to be a

serious offense that warrants a serious punishment, and we cannot second guess that judgment based on our estimation of what harm the government may or may not have suffered.  Cf. Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285 (1958) ("Whatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy.").[1]

### III.

Bryan Strelski also contends that the court erred by not giving him an opportunity to speak to the court before the imposition of his sentence.  "Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ."  Fed. R. Crim. P. 32(i)(4)(A)(ii).

Bryan and Shirley were permitted to testify at their sentence hearing.  After Bryan's direct examination, he said to the court, "I have some things I wanted to read off to you if I could, Your Honor."  The court allowed him to proceed, and Bryan then apologized to the court for his crimes, explained that he and his wife didn't believe that they were committing a crime at the time they made the deposits, and told the judge about his family situation.  After the Strelskis testified, the court took a seven-week recess to allow the parties to submit additional briefs

---

[1] In her appellate brief, Shirley also argues that "the district court erred by ordering [her] to forfeit the entire amount of $140,630.00 in addition to forfeiting their family's house."  That assertion is wrong because both the sentencing transcript and the personal money judgment entered by the district court make clear that the proceeds of the sale of the property would be used to satisfy the money judgment.

on the forfeiture issue.  When the hearing resumed, the court explained its sentence, and then asked the Strelskis and defense counsel to approach the podium. The court asked counsel if either Bryan or Shirley wished to address the court, and their counsel replied, "No.  No, thank you, Your Honor."  The court then imposed its sentence.

Bryan argues that the district court violated Rule 32(i)(4)(A)(ii) by addressing his attorney instead of addressing him personally just before imposing his sentence.  Although the court did not address Bryan personally at that time, he had already been given the opportunity to address the court and present his mitigating evidence at the end of his direct examination.  As such, the court complied with Rule 32(i)(4)(A)(ii).

**AFFIRMED.**