514 So.2d 1079 (1987)
Dilar S. BOOKER, Petitioner,
v.
STATE of Florida, Respondent.
No. 68400.
Supreme Court of Florida.
September 24, 1987.
Rehearing Denied December 1, 1987.
James Marion Moorman, Public Defender, Tenth Judicial Circuit, and Douglas S. Connor, Asst. Public Defender, Bartow, for petitioner.
Robert A. Butterworth, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for respondent.
EHRLICH, Justice.
We have for our review Booker v. State, 482 So.2d 414 (Fla. 2d DCA 1985), wherein the district court certified the following question of great public importance:
WHEN AN APPELLATE COURT FINDS THAT A SENTENCING COURT *1080 RELIED UPON A REASON OR REASONS THAT ARE PERMISSIBLE UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.701 IN MAKING ITS DECISION TO DEPART FROM THE SENTENCING GUIDELINES, WHAT CRITERIA SHOULD AN APPELLATE COURT ADOPT IN DETERMINING IF THE SENTENCING COURT ABUSED ITS DISCRETION IN ITS EXTENT OF DEVIATION?
Id. at 419-420. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The petitioner's first issue here is that there were no valid reasons for departure in his case. A full recitation of the trial court's order departing from the presumptive guidelines sentence of twelve to thirty months and sentencing the petitioner to five consecutive five-year terms is contained in the opinion of the district court below, 482 So.2d at 416-418, n. 1, and no useful purpose would be served by reproducing it here. It is sufficient for our purposes to note the petitioner's argument which is that the sole reason for departure in this case was probation violations and that the trial court's departure sentence above the one cell allowed by Florida Rule of Criminal Procedure 3.701(d)(14) was erroneous. We disagree with the petitioner's characterization of the reasons for departure. We agree with the district court that first, the prior probation violations were a valid reason to depart because a probation violation which occurs between the substantive offense and the current revocation is not scored on the guidelines score sheets; use of these unscored probation violations was a valid reason for departure. See Adams v. State, 490 So.2d 53, 54 (Fla. 1986); State v. Pentaude, 500 So.2d 526, 528 (Fla. 1987) (rule 3.701(d)(14) does not limit trial judge's discretion to depart based upon numerous other factors surrounding a violation of probation).
The second reason for departure, petitioner's escalating pattern of criminal activity, is a valid reason for departure and is amply supported by the facts in this case. See Keys v. State, 500 So.2d 134, 135-136 (Fla. 1986) (escalating course of criminal conduct from crimes against property to violent crimes against person is a valid reasons for departure).
The question certified to us by the Second District Court of Appeal in this case was previously certified by that court in Ochoa v. State, 476 So.2d 1348 (Fla. 2d DCA 1985). In our decision in Ochoa (Ochoa v. State, 509 So.2d 1115 (Fla. 1987)), we did not address the certified question. After accepting jurisdiction in both Ochoa and the case sub judice, the legislature amended section 921.001(5), Florida Statutes, to provide that "[t]he extent of departure from a guideline sentence shall not be subject to appellate review." Ch. 86-273, § 1, Laws of Fla. Accordingly, we issued an order in both cases requesting the parties "to brief the issue of judicial review of sentencing and the effect, if any, of the aforedescribed legislative action on judicial review." The parties in both cases have responded and have filed briefs on this issue. The petitioner sub judice alleges that his sentence of twenty-five years (five consecutive five-year terms) was an abuse of discretion by the trial court.[1] Therefore, the issue is squarely presented here as to the effect chapter 86-273, § 1 has on the power of this Court and the district courts to review the extent of departure from a guidelines sentence.
In Albritton v. State, 476 So.2d 158 (Fla. 1985), we addressed the issue of what standard should be employed by a reviewing court when presented with a departure sentence. Both parties, although suggesting different approaches, agreed that the extent of departure was subject to appellate review. Id. at 160. The state agreed that the extent of departure should be subject to an abuse of discretion standard, and it was this standard we adopted. In doing so we rejected the district court's holding that the only limitation on departure sentence was the statutory maximum. Id.
*1081 This Court's order in Ochoa and the case sub judice requesting briefs on the impact of chapter 86-273 was premised upon two basic concerns, the separation of powers issue and the ex post facto implications. In analyzing the separation of powers issue, two basic issues must be addressed. First is whether a reviewing court has any inherent power over reviewing acts of lower tribunals which may not be restricted by the legislative branch. The second concerns the legislature's power to limit the scope of appellate review. It has traditionally been recognized that courts do have certain inherent powers. In Petition of Florida Bar, 61 So.2d 646 (Fla. 1952), we stated:
It is true that courts of general jurisdiction have certain inherent or implied powers that stem from the constitutional or statutory provisions creating the court and clothing it with jurisdiction. In other words, regularly constituted courts have power to do anything that is reasonably necessary to administer justice within the scope of its jurisdiction, but not otherwise. Inherent power has to do with the incidents of litigation, control of the court's process and procedure, control of the conduct of its officers and the preservation of order and decorum with reference to its proceedings. Such is the scope of inherent power, unless the authority creating the court clothes it with more.
Id. at 647. Concerning the second issue, legislative restriction on the scope of rights to appeal, this Court in Austin v. Town of Oviedo, 92 So.2d 648 (Fla. 1957), observed:
In McJunkins v. Stevens, 88 Fla. 559, 102 So. 756, we announced a rule governing appellate practice which has been consistently followed by this Court. It was there held in substance that while the Constitution delineates the appellate jurisdiction of the Supreme Court and of the Circuit Courts, it does not prescribe the means or manner by which such appellate jurisdiction is acquired in particular cases. It remains the responsibility of the Legislature to prescribe the means and method by which appellate review may be obtained.
In Reed v. State, 94 Fla. 32, 113 So. 630, a capital case, this Court stated the rule to be that the right to appellate review of a case which has already been tried in a trial court is not a natural, absolute, or unqualified right but rather is a right created by law. To enjoy the right a party must first comply with the conditions precedent and regulatory required by law. In the absence of constitutional inhibitions it is within the power of the Legislature to impose conditions and restrictions on the privilege to seek appellate review.
Id. at 650. The discernible principle from Austin is that, absent a specific constitutional right to appellate review on a particular issue, the scope of appellate review may be modified by the legislature. The question then becomes does a reviewing court have inherent power to review actions of lower tribunals absent a substantive grant of that right from the legislature?
The rule in Florida historically has been that a reviewing court is powerless to interfere with the length of a sentence imposed by the trial court so long as the sentence is within the limits allowed by the relevant statute. As we stated in Brown v. State, 152 Fla. 853, 13 So.2d 458 (1943):
If the statute is not in violation of the Constitution, then any punishment assessed by a court or jury within the limits fixed thereby cannot be adjudged excessive, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but a legislative power, controlled only by the provisions of the Constitution.
Id. at 858, 13 So.2d at 461 (quoting 15 Am.Jur. Criminal Law § 526 (1938). See also Stanford v. State, 110 So.2d 1 (Fla. 1959); Walker v. State, 44 So.2d 814 (Fla. 1950); Infante v. State, 197 So.2d 542 (Fla. 3d DCA 1967); Rohdin v. State, 105 So.2d 371 (Fla. 2d DCA 1958). This view is also consistent with the United States Supreme Court's treatment of this issue. In Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Court was confronted *1082 with the claim that separate sentences for separate offenses was violative of the double jeopardy clause. In rejecting this claim, the Court stated:
In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility ... these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given power to revise sentences, the power to increase as well as the power to reduce them... . This Court has no such power.
Id. at 393 (citations omitted).
We find from our prior holdings that there is no inherent judicial power of appellate review over sentencing which would render chapter 86-273 violative of the separation of powers provisions of article II, section 3. Indeed, it clearly appears that both this Court and the United States Supreme Court have embraced the notion that so long as the sentence imposed is within the maximum limit set by the legislature, an appellate court is without power to review the sentence. In effect, this rule recognizes that setting forth the range within which a defendant may be sentenced is a matter of substantive law, properly within the legislative domain. Accordingly, we find that chapter 86-273 does not violate article II, section 3.[2]
We point out that our holding in Albritton on this issue was premised upon first, the state agreeing that a departure sentence, while within the statutory maximum, could still be reviewed for an abuse of discretion by the trial court. Second, it was our view that appellate review of the extent of departure under an abuse of discretion standard furthered the stated purpose of the guidelines  to promote uniformity of sentences  while still leaving discretion with the trial court to make an individualized sentencing decision. 476 So.2d at 160. It may well be that the legislature, by eliminating appellate review on the extent of departure has, in fact, undermined the fundamental purpose of the guidelines, uniformity in sentencing. This observation, however, goes to the wisdom of the amendment and not to its constitutionality.
The second issue concerns the ex post facto clause found in both the United States Constitution, article I, section 9, and the Florida Constitution, article I, section 10. Chapter 86-273, by the terms set forth in section 3, became effective on July 9, 1986. The issue presented therefore is whether this amendment may constitutionally be applied to crimes committed prior to the amendment's effective date. For the reasons which follow, we hold that it may not.
In Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court reaffirmed that "two critical elements must be present for a criminal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. at 29, 101 S.Ct. at 964 (footnotes omitted). *1083 In Weaver, the Court relied on its prior decision in Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), which involved a sentence of fifteen years imposed upon a prisoner after his conviction for grand larceny. On the date the offense was committed, the maximum authorized sentence was fifteen years, and the minimum sentence was for no less than six months. The statute in effect at the time of the defendant's sentencing, which was utilized by the sentencing court, made "mandatory what was before only the maximum sentence." Id. at 400, 57 S.Ct. at 798. Under the prior statute, the parole authorities could direct that the prisoner be released on parole. The new statute mandated that within six months after initial incarceration, the parole authorities fixed the duration of the prisoner's confinement. The parole authority could then release the prisoner on parole after the period of confinement, but, at its discretion, could order the prisoner reincarcerated. Id. at 398-399, 57 S.Ct. at 797-798.
The state supreme court rejected the defendant's ex post facto claim, holding that the statute under which the defendant was sentenced did not change the punishment because the minimum and maximum punishment under both acts were the same. Id. at 400, 57 S.Ct. at 798. The Supreme Court rejected this reasoning and found that sentencing defendants under the new statute was unconstitutional.
It is true that petitioners might have been sentenced to fifteen years under the old statute. But the ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer... . It is for this reason that an increase in the possible penalty is ex post facto... . regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier... .
Removal of the possibility of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will operates to their detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old... . It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.
Id. at 401-402, 57 S.Ct. at 799 (citations omitted).
Weaver dealt with the effect of a new Florida statute concerning accrual of statutory gain time for prisoners. The effect of the new statute on the prisoner, Weaver, was to theoretically extend his incarceration for over two years more than he would have served under the gain time statute in effect at the time Weaver committed his crime. 450 U.S. at 27, 101 S.Ct. at 963. The Court found, under its two-part analysis, that the new statute could not be applied to Weaver because, first, it applied retroactively. The Court rejected the state's argument that it was not retroactive because it applied only after its effective date, holding "it is the effect, not the form, of the law that determines whether it is ex post facto." Id. at 31, 101 S.Ct. at 965 (citation omitted). The state also argued that the law was not retrospective because it was not part of the original sentence or punishment. The Court rejected this argument because it was one determinant of Weaver's prison term whether or not it was technically part of Weaver's sentence, and that a statute may be retrospective "even if it alters punitive conditions outside the sentence." Id. at 32, 101 S.Ct. at 966. Second, the Court found that the new statute would operate to Weaver's detriment because it "constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." Id. at 35-36, 101 S.Ct. at 967-968.
It is clear, in light of Lindsey and Weaver, that chapter 86-273 may not be applied *1084 to crimes committed before July 9, 1986. When petitioner's crimes were committed, the statute provided for a convicted defendant to be sentenced under the guidelines unless there were clear and convincing reasons to depart. Even if there existed clear and convincing reasons, a sentence imposed outside the guidelines, but still within the statutory maximum for the offense, could be reviewed and vacated by the reviewing court under the abuse of discretion standard adopted in Albritton. Although chapter 86-273 states that its effective date is July 9, 1986, its provisions constrict current appellate review of petitioner's sentence based on crimes committed before its effective date, and thus operates retroactively. It does not matter whether this review was a technical part of the petitioner's sentence, Weaver; it was one determinant of petitioner's prison term. Lindsey. Under Albritton, a defendant's departure sentence was invalid if virtually no reasonable judge would have imposed that sentence based upon the facts presented. The focus of an ex post facto analysis is not, in this context, based on a defendant's personal or vested right to have his sentence reduced, Weaver, 450 U.S. at 29 n. 13, 101 S.Ct. at 964 n. 13; rather, "[t]he inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual." Id. at 33, 101 S.Ct. at 966. (Emphasis added). Under the provisions of chapter 86-273, section 1, a person validly sentenced outside the guidelines may not have his departure sentence reviewed or reduced even though by definition, as set forth in Albritton, virtually no reasonable judge would have imposed such a sentence. Therefore, chapter 86-273 clearly operates to the detriment of those whose crimes were committed prior to July 9, 1986. We hold that chapter 86-273 may not constitutionally be applied to those whose crimes were committed prior to its effective date.[3]
Accordingly, chapter 86-273 cannot apply to petitioner as his crimes were committed prior to July 9, 1986. Therefore, we will address petitioner's claim that his twenty-five-year sentence was an abuse of discretion by the trial court. We agree with the district court below that although the sentence appears "somewhat harsh," 482 So.2d at 419, the trial court did not abuse its discretion. We agree with the district court's observation:
In view of the written reasons for departure and the record in this case, we cannot say that it was unreasonable for the trial judge to sentence the defendant as he did in this case.
Id. The question certified by the district court essentially asked us to articulate criteria for determining what constitutes an abuse of discretion. In our view, the district court correctly analyzed this issue and also identified the relevant criteria. In Albritton, 476 So.2d at 160, we stated:
An appellate court reviewing a departure sentence should look to the guidelines sentence, the extent of the departure, the reasons given for the departure, and the record to determine if the departure is reasonable.
We also pointed out, id. at 160 n. 3, that our decision in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), contained an extensive discussion of what constitutes an *1085 abuse of judicial discretion. The district court below, 482 So.2d at 419, properly pointed out that Canakaris rested on the following test articulated in Delno v. Market Street Railway Co., 124 F.2d 965, 967 (9th Cir.1942):
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Canakaris, 382 So.2d at 1203. While we appreciate the district court's desire for a more specific criteria of what constitutes an abuse of discretion, developing a precise check list is neither possible nor desirable. Inquiring into whether the trial court abused its discretion necessarily turns on the specific facts presented in each case. If, based upon the entire set of circumstances presented, the reviewing court finds the sentence so excessive as to shock the judicial conscience, see Woosley v. United States, 478 F.2d 139 (8th Cir.1973), this will likely evidence an abuse of discretion. Reviewing courts which have held that they possess the power to review a sentence on these grounds have articulated a variety of phrases which, in fact, comport to the abuse of discretion standard adopted by this Court in Canakaris. See, e.g., Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932) (abuse of discretion implies arbitrary and capricious actions); Woosley (greatly excessive under traditional concepts of justice or manifestly disproportionate to the crime or the criminal); State v. Johnson, 67 N.J.Super 414, 170 A.2d 830 (N.J. Super.Ct.App.Div. 1961) (manifestly excessive). In Woosley, 478 F.2d at 143, the court recognized that a particular judge who follows a predetermined policy or "mechanistic approach" for determining a sentence in a particular type of case has not, in fact, exercised his sound discretion "after consideration of all the circumstances surrounding the crime." As we stated in Canakaris,
The trial courts' discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.
382 So.2d at 1203. The inherent difficulty in determining whether cases are essentially alike is exacerbated in the sentencing guidelines context because of the numerous factors unique to the individual defendant which are calculated in arriving at a presumptive guidelines sentence. The abuse of discretion standard exists to ensure that sentences are not imposed arbitrarily or capriciously or at the whim of an individual judge whose personal feelings against a particular defendant, or a particular type of crime, may render the sentence imposed so offensive to traditional notions of justice that it does not meet the objective test of reasonableness.
In conclusion, we hold that chapter 86-273 does not violate the separation of powers provision of article II, section 3 of the Florida Constitution. We also hold that chapter 86-273 may not be applied to those defendants whose crimes were committed prior to July 9, 1986. We answer the certified question as stated and reaffirm the standard set forth in Albritton and Canakaris. We find the reasons for departure sub judice were clear and convincing and supported by the facts in this case; we also find no abuse of discretion by the trial court in the sentence imposed in this case. Accordingly, we approve the decision of the district court below.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The district court below found that although the twenty-five-year sentence "seems to be somewhat harsh," the trial court had not abused its discretion. The district court affirmed the sentence and certified the question now before us. 482 So.2d at 419-420.
[2] We point out, of course, that our holding here is limited to the narrow issue of the extent of departure from a guidelines sentence within the statutory maximum, and does not involve appellate review of claims based upon other grounds. It should also be noted that appellate scrutiny of the process by which a defendant is convicted and sentenced is not implicated by our holding herein. As the Fifth Circuit Court of Appeals has stated:

Appellate modification of a statutorily authorized sentence, however, is an entirely different matter than the careful scrutiny of the judicial process by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases.
United States v. Hartford, 489 F.2d 652, 654 (5th Cir.1974). See also, Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); Yates v. United States, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); Woosley v. United States, 478 F.2d 139 (8th Cir.1973).
[3] The recent Supreme Court case of Miller v. Florida, ___ U.S. ___, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), supports our conclusion. In Miller the Court rejected, id., 107 S.Ct. at 2450, our rationale in State v. Jackson, 478 So.2d 1054 (Fla. 1985), wherein we held that a convicted defendant could be sentenced under the current guidelines, rather than the guidelines in effect at the time the crime was committed, without violating the ex post facto clause. Significant for our purposes here is the Supreme Court's holding, id., 107 S.Ct. at 2452, that sentencing defendant under the current guidelines "foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law." This same constitutional infirmity would be present if we were to apply chapter 86-273 to those, like petitioner, whose crimes were committed prior to July 9, 1986; such defendant would lose his ability to challenge a departure sentence based on an abuse of discretion by the sentencing judge. Our conclusion is likewise consistent with and supported by our recent decision in State v. Yost, 507 So.2d 1099 (Fla. 1987), wherein we held that the application of the penalty provisions of § 27.3455, Fla. Stat. (1985), to crimes committed prior to the effective date of this statute violate the ex post facto provisions of the constitutions of the United States and Florida.