# First District Court of Appeal
## State of Florida

_____

No. 1D2021-3673
_____

Nicholas G. Coullias,

    Appellant,

    v.

State of Florida,

    Appellee.

_____

**JUSTIFICATION OF PARAGRAPH CORRECTED ON PAGE 7**
**RE-FORMATTED PARAGRAPH IS UNDERLINED IN RED**
**MAILED: August 15, 2025**
**BY: KS**

On appeal from the Circuit Court for Alachua County.
David P. Kreider, Judge.

August 13, 2025

Per Curiam.

Appellant was found guilty by a jury of (Count I) DUI manslaughter, (Count II) possession of a controlled substance without a prescription, and (Count III) possession of cocaine. On the DUI manslaughter conviction, Appellant was sentenced to fifteen years in prison. On Count II, he was sentenced to five years in prison, and on Count III, he received five years of drug offender probation to be served following his release. Appellant raises three issues on appeal, the first two of which we affirm without further comment. In his third issue on appeal, Appellant argues that his sentence for DUI manslaughter is illegal. We agree, and thus reverse Appellant's sentence and remand for resentencing.

Appellant did not object when the trial court sentenced him to fifteen years in prison for DUI manslaughter, but he did file a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b), preserving this issue for appeal. In his motion, Appellant argued, as he does now on appeal, that his sentence for DUI manslaughter was illegal because it did not include the statutorily required probationary period. He claimed that the total sentence for the charge could not exceed fifteen years, and must include a probationary period that, at a minimum, is of sufficient length to permit the defendant to complete a substance abuse course. The trial court denied the motion, finding that the probationary requirements were met by the imposition of a trailing term of drug offender probation on Count III.

Section 316.193, Florida Statutes, provides that a person who violates subsection (1), operates a vehicle, and causes the death of another by operation of such, commits "[a] felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." § 316.193(3)(a)–(c)3.a., Fla. Stat. Under section 775.082, Florida Statutes, the maximum sentence for a second-degree felony is fifteen years. *See* § 775.082(3)(d), Fla. Stat. However, the DUI statute further provides as follows:

> The court *shall* place all offenders convicted of violating this section on monthly reporting probation and *shall* require completion of a substance abuse course conducted by a DUI program licensed by the department under s. 322.292, which must include a psychological evaluation of the offender. If the DUI program refers the offender to an authorized substance abuse treatment provider for substance abuse treatment, in addition to any sentence or fine imposed under this section, completion of all such education, evaluation, and treatment is a condition of reporting probation.

§ 316.193(5), Fla. Stat. (emphasis added).

Several of our sister courts have addressed the issue of whether section 316.193(5)'s requirement of probation and completion of a substance abuse course prevents a trial court from imposing the maximum fifteen-year prison sentence allowed under

2

section 775.082. In *Powers v. State*, 316 So. 3d 352, 355–56 (Fla. 4th DCA 2021), the Fourth District answered the question in the affirmative. The court explained its reasoning as follows:

> Even looking beyond the plain language and applying statutory construction principles, the law disfavors the State's argument. Statutory Provisions must "be read together to achieve a consistent whole, and where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." *Larimore*, 2 So. 3d at 106 (internal alterations and quotation marks omitted) (quoting *Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 199 (Fla. 2007)). Further, "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." *McKendry v. State*, 641 So. 2d 45, 46 (Fla. 1994).

> Here, it is undisputed that Appellant's maximum sentence for DUI Manslaughter—UBAL was fifteen years pursuant to section 775.082(3)(c), Florida Statutes (2011). The trial court could easily have construed section 316.193(5) and 775.082(3)(d) in harmony by simply sentencing Appellant to a prison term less than the statutory maximum of fifteen years and by providing for a probationary component, with the combination of time in prison and time of probation not exceeding fifteen years. . . . [T]his would have satisfied the additional rule of statutory construction that specific statutes control over general statutes. *McKendry*, 641 So. 2d at 46. This approach would also have complied with the requirement that a sentence split between prison and probation not exceed the statutory maximum. *See Jackson*, 276 So. 3d at 973.

*Id.* The Fourth District remanded the case for resentencing, holding that Powers's sentence "may not exceed fifteen years, and shall include a probationary period that, at a minimum, is of sufficient length to permit Appellant to complete a substance abuse course pursuant to section 316.193(5)." *Id.* at 356.

3

The Second District has reached the same conclusion as the Fourth. In *Archer v. State*, 332 So.3d 24, 25 (Fla. 2d DCA 2021), the court stated, "Like the court in *Powers*, we conclude that there is no conflict between the general sentencing statute—section 775.082, Florida Statutes (2018), in this case—and section 316193 because section 775.082 provides for a maximum prison term of fifteen years not a mandatory term of fifteen year." *Id.* at 25–26.

We also conclude that there is no conflict between the general sentencing statute and section 316.193. In doing so, we find that a sentence for DUI manslaughter must include a term of probation that allows for a defendant to complete a substance abuse course.

The trial court denied Appellant motion to correct sentencing error, finding that the requirements of section 316.193(5) were met by the imposition of a trailing term of drug offender probation on Count III. While there is nothing in section 316.193(5) that requires the probation be imposed on the DUI manslaughter count, the drug offender probation imposed in this case does not satisfy the statutory requirements. The conditions of probation imposed do not require Appellant to "complet[e] a substance abuse course conducted by a DUI program licensed by the department under s. 322.292, which [] include[s] a psychological evaluation of the offender," as required by statute. § 316.193(5), Fla. Stat. Accordingly, the probation imposed does not satisfy the requirements of the statute.

Because the requirements of section 316.193(5) are not satisfied, we reverse Appellant's sentence and remand for the trial court to conduct a de novo sentencing hearing. As the court did in *Archer* and *Powers*, we certify the following question of great public importance to the Florida Supreme Court:

> DOES SECTION 316.193(5)'S REQUIREMENTS OF "MONTHLY REPORTING PROBATION" AND COMPLETION OF A SUBSTANCE ABUSE COURT VITIATE A TRIAL COURT'S DISCRETION TO IMPOSE THE MAXIMUM FIFTEEN-YEAR PRISON SENTENCE PROVIDED IN SECTION 775.082, FLORIDA STATUTES?

AFFIRMED in part, REVERSED in part, and REMANDED.

M.K. THOMAS, J., concurs; BILBREY, J., concurs with opinion; TANENBAUM, J., dissents with opinion.

-----

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

-----

BILBREY, J., concurring.

I concur in the majority opinion. Appellant's sentence violated Florida law because the sentencing court did not follow the plain language of section 316.193(5), Florida Statutes, that required "monthly reporting probation" as well as "completion of a substance abuse course." At least two other district courts have ruled the same way. *See Powers v. State*, 316 So. 3d 352, 355–56 (Fla. 4th DCA 2021); *Archer v. State*, 332 So. 3d 24, 25 (Fla. 2d DCA 2021).[*]

-----

[*] Like here, in both *Powers* and *Archer*, the claim of error in the sentence was preserved after sentencing by a motion under rule 3.800(b), Florida Rules of Criminal Procedure. The substance of Appellant's claim was that the trial court erred by not imposing a period of probation to allow completion of a substance abuse course. Before the trial court in the 3.800(b)(2) motion and here, Appellant calls this an illegal sentence. But whether named an illegal sentence or more broadly a sentencing error, the substance of the claimed error is the same and is properly before us. *See Fulton Cnty. Adm'r v. Sullivan*, 753 So. 2d 549, 554 (Fla. 1999) ("[O]ur courts should look to the substance of the motion and rule on the basis of the legal issue raised in the motion."). Many cases cited in the dissent concern an illegal sentence under rule 3.800(a) and are inapplicable since an illegal sentence under that subsection is not included in the broader category of sentencing error in rule 3.800(b).

5

In reversing for resentencing, we are not, as the dissent contends, imposing our personal opinions on the appropriateness of the sentence. We know that subject to constitutional limitations, "a trial court has broad discretion to sentence a person convicted of a crime to a term of incarceration within the range authorized by law." *State v. Manago*, 375 So. 3d 190, 192 (Fla. 2023); *see also* § 921.002(1), (1)(g), Fla. Stat. While sentencing judges may temper justice with mercy, as appellate judges we are reviewing only the legality and constitutionality of the sentencing process and sentence. We are not saying that the sentence of fifteen years was too high, only that without requiring some period of probation to allow the completion of a substance abuse course, the sentence did not comply with section 316.193(5), Florida Statutes.

The dissenting judge contends that he may disregard explicit direction from the Florida Legislature as to DUI sentences as mere "policy enforcement." However, "sentencing policy is a matter of substantive law that is within the province of the legislature." *State v. Ayers*, 901 So. 2d 942, 946 (Fla. 2d DCA 2005) (citing *Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002)). We are not at liberty to "ignore the criminal sentencing policy established by the legislature. . . ." *Id.*

As the majority opinion and the opinions in *Powers* and *Archer* point out, section 316.193(5) applies here since it refers to "all offenders convicted of violating this section." DUI manslaughter is in "this section," which consists of all of section 316.193. *See Atl. Gulf Communities Corp. v. City of Port St. Lucie*, 764 So. 2d 14, 17–18 (Fla. 4h DCA 1999) (defining sections and subsections of Florida statutes). Appellant was convicted of violating section 316.193(3)(c)3. There are valid policy arguments why a defendant convicted of DUI manslaughter should serve only a prison sentence, rather than being sentenced to a period of probation to complete a substance abuse course. But such policy decisions are for the Legislature, not the courts.

Finally, the dissent contends that we are imposing a burden on sentencing courts since they will have no idea how long it takes to complete a substance abuse course. This is incorrect. The Legislature has directed that the required course must be

6

"conducted by a DUI program licensed by the department [of highway safety and motor vehicles] under s. 322.292, which must include a psychosocial evaluation of the offender." § 316.193(5), Fla. Stat. Section 322.292(1), Florida Statutes, in turn allows the DHSMV to "license and regulate all DUI programs." DHSMV is also required to "[a]dopt rules for statutorily required education, evaluation, and supervision of DUI offenders." § 322.292(2)(a), Fla. Stat.

DHSMV has adopted the statutorily mandated rules in chapter 15A-10, Florida Administrative Code. Following an assessment using a standard form, DUI offenders are required to complete either a 12- or 21-hour course. 15A-10.024–.025, F.A.C. This assessment could occur after the offender enters a plea or is found guilty, but before sentencing, so the sentencing judge knows the time needed for completion. *See* § 921.231, Fla. Stat. ("Presentence investigation reports"). We are not imposing an insurmountable burden on the diligent trial judges of Florida in ensuring that they comply with the Legislature's command for DUI sentences. Instead, we are correct to reverse for resentencing in accordance with Florida law.

TANENBAUM, J., dissenting.

The defendant, while high on various illegal narcotics, drove his speeding car down a country road and into the back of a truck, killing one of the truck's occupants—a 23-year-old man engaged to be married, a father of a young child. This was not the defendant's first brush with the law. In the defendant's criminal past were multiple drug-offense convictions and violations of probation. For the present tragic incident, a jury convicted the defendant of DUI manslaughter, plus two more drug-possession offenses. At sentencing, the judge explained to the defendant that, given his history—which indicated he was not able to reform his behavior despite being given opportunities to do so—he was imposing the maximum authorized sentence on the DUI conviction: fifteen years in state prison.[1]

---

[1] The judge imposed a consecutive five-year prison term for one of the other counts (possession of controlled substance without

The judge imposed a legal (not to mention factually justified) *punishment*, which did not exceed the legislatively authorized maximum. To nevertheless vacate his punishment decision is effectively to say the level of the punishment chosen was too high, thereby reading a new right into section 316.193(5), Florida Statutes: a right to have an otherwise legislatively authorized imprisonment sentence reduced to force a trial judge to grant an unspecified amount of judicial grace (*i.e.*, probation). This runs counter to statutory law, to the supreme court's past directives, and to this court's recent en banc decision reiterating the constitutional limits on our ability to review a trial judge's exercise, within legal boundaries, of his sentencing discretion. I would affirm.

I

Remedying harm is the coin of the judicial realm. To grant relief from legally cognizable harm is the judicial power's primary—and in many cases, its exclusive—function. In the appellate context, that power exists to cure demonstrated harm caused the appellant by the trial judge's exercise of judicial power. *See Gazoombi v. State*, 406 So. 3d 371, 377 (Fla. 1st DCA 2025) (en banc) (citing authority). To demonstrate cognizable harm, an appellant must make the case that the court's order infringed or violated one of his substantive rights—that right being either constitutionally or statutorily sourced. *Cf. id.* at 376–77; *Swift Response, LLC v. Routt*, 401 So. 3d 640, 642 (Fla. 1st DCA 2025). When it comes to appellate review of sentencing, the focus is on whether the trial judge's exercise of judicial power exceeded legal limits. Absent an appellant's showing that he has suffered this type of harm, our appellate judicial power cannot run.

Failure to enforce policy—detached from an appellant's substantive right—does not give rise to individualized harm for which we can provide a remedy. *Cf. Bozeman v. City of St. Petersburg*, 76 So. 894, 896 (Fla. 1917) (explaining that absent particularized injury suffered by a party, relief from a dereliction in policy enforcement "should be through the proper public

---

a prescription) and five years of probation to follow imprisonment on the third count of conviction.

authorities"); *Henry L. Doherty & Co. v. Joachim*, 200 So. 238, 239 (Fla. 1941) (holding that when "an official threatens an unlawful act, the public by its representatives must institute the proceedings to prevent it," and not a "private person," unless he "can show a damage peculiar to his individual interests"); *Rodriguez v. State*, 919 So. 2d 1252, 1278 (Fla. 2005) (noting that "[l]itigants have no standing [or right] to enforce internal court policy"). Unlike when an appellate court assesses whether a trial judge has infringed an individual's negative right (*e.g.*, by exceeding a limit on authority to deprive a defendant of a liberty interest), there typically are not readily discernable principles to be applied when determining whether the judge has caused individualized harm through his failure to implement a general court policy or program set out by statute.

With the above in mind, it makes sense—given that sentencing is simply fulfillment of legislative policy—that appellate review of a trial judge's sentencing decisions is quite limited in scope. *See Gazoombi*, 406 So. 3d at 380 (observing that "a trial court's choice of sentence within an authorized range is not cognizable as a claimed harm that can be remedied on appeal" (citing supreme court authority)). As the supreme court explained, "The rule in Florida historically has been that a reviewing court is *powerless* to interfere with the length of a sentence imposed by the trial court so long as the sentence is within the limits allowed by the relevant statute." *Booker v. State*, 514 So. 2d 1079, 1081 (Fla. 1987) (emphasis supplied); *see also id.* at 1082 (explaining that "so long as the sentence imposed is within the maximum limit set by the legislature, an appellate court is without power to review the sentence").

Punishment, not surprisingly, is the primary objective behind the Legislature's Criminal Punishment Code ("CPC"). *See* § 921.002(1)(b), (g), Fla. Stat. (stating that the CPC "embodies the principles that" both "[t]he primary purpose of sentencing is to *punish* the offender" and "[t]he trial court judge may impose a sentence up to and including *the statutory maximum* for *any* offense" (emphases supplied)); *cf. Villery v. Fla. Parole & Prob. Comm'n*, 396 So. 2d 1107, 1110 (Fla. 1980) (contrasting a sentence with probation; noting that they are "discrete concepts which serve wholly different functions"; and explaining that a sentence of

imprisonment "serves as a penalty, as a payment of [a] defendant's 'debt to society'"). The constitution's negative constraints in the criminal sentencing context, in turn, stem from "the intimate connection between crime and *punishment*," such that "a fact [that is] by law essential to the penalty"—that "alter[s] the prescribed range of sentences to which a defendant is exposed [] in a manner that aggravates the *punishment*"—is "an element of the offense." *Alleyne v. United States*, 570 U.S. 99, 108–09 (2013) (emphases supplied); *see also id.* at 109 (highlighting "connection between crime and punishment" by pointing to "various treatises defin[ing] 'crime' as consisting of every fact which is in law essential to the punishment sought to be inflicted, or the whole of the wrong to which the law affixes punishment" (internal citation, ellipsis, and quotations omitted)).

The U.S. Supreme Court explained an appellate court's limited review of sentencing decisions the following way:

> In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility . . . *these are peculiarly questions of legislative policy*. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given *power to revise sentences, the power to increase as well as the power to reduce them*. . . . This Court has *no such power*.

*Gore v. United States,* 357 U.S. 386, 393 (1958) (emphases supplied) (internal citations omitted), *quoted in Booker,* 514 So. 2d at 1081–82.

Our supreme court has viewed the judiciary's role in sentencing in a similarly limited way. It explained that "the power to declare what *punishment* may be assessed against those convicted of crime *is not a judicial power*, but a legislative power, controlled only by the provisions of the Constitution," so when the Legislature "has by statute fixed the maximum *punishment* which may be imposed for violation of the provisions of the statutes," the

trial judge has full authority "to fix by sentence the punishment within the limits prescribed by statute." *Brown v. State*, 13 So. 2d 458, 461 (Fla. 1943) (emphases supplied). That means "[i]f the statute is not in violation of the Constitution, then any *punishment* assessed by a court or jury *within the limits* fixed thereby cannot be adjudged excessive . . . and is not a matter for review and remedy by the appellate court." *Id.* at 461–62 (emphases supplied); *see also Booker*, 514 So. 2d at 1082 ("In effect, this rule recognizes that setting forth the range within which a defendant may be sentenced is a matter of substantive law, properly within the legislative domain.").

Probation has a different sentencing function. The aim of probation "is rehabilitation rather than punishment and presupposes the fact that [a] probationer is not in prison confinement." *Bernhardt v. State*, 288 So. 2d 490, 495 (Fla. 1974). Probation is a mechanism allowing the trial judge "to assess the defendant's amenability to reform." *Maxwell v. State*, 383 So. 3d 892, 897 (Fla. 1st DCA 2024) (internal quotations omitted). The judge "stops short of giving the defendant the maximum authorized sentence" and looks to the defendant's post-imprisonment conduct "to find . . . a bespoke period of incarceration appropriate to the defendant's past life, health, habits, conduct, and mental and moral propensities." *Id.* (internal quotations and citation omitted). For this reason, unlike criminal *punishment* statutes (discussed above), "[s]tatutory provisions for extending probation privileges to those who have been found guilty of violations of the criminal laws *are not mandatory upon the trial judges*" but instead "merely represent an enlightened approach to the solution of the problem of providing adequate punishment for criminal offenders." *State ex rel. Roberts v. Cochran*, 140 So. 2d 597, 599 (Fla. 1962) (emphasis supplied). Because a trial judge imposes probation with an eye toward rehabilitation rather than punishment, whether to "grant [] probation rests within the broad discretion of the trial judge and is a matter of grace *rather than right*." *Bernhardt*, 288 So. 2d at 494 (emphasis supplied).

To be sure, probation must be legislatively authorized— effectively, as a rehabilitation exception to the conviction-driven punishment regime discussed above. The trial judge's decision to impose probation, however, is not the implementation of

legislative policy the same way an imprisonment sentence is. Imprisonment is punishment, and the Legislature clearly sets out that punishment's terms, conditions, and limits. Probation, by contrast, is a judicially determined alternative (to the extent authorized by the Legislature) to full imposition of the authorized punishment. The defendant in this case asks that we grant him relief from his sentence based on blurring of the distinction between punishment and probation. In the next part, I discuss why this distinction limits our ability to grant him his requested relief.

## II

## A

The defendant's sole argument against his current sentence is that it is *illegal*.[2] As mentioned above, this would be a cognizable claim if his prison sentence "exceed[ed] the maximum period set forth by law" for DUI manslaughter. *State v. Callaway*, 658 So. 2d 983, 988 (Fla. 1995) (defining an "illegal sentence"); *see also State v. Mancino*, 714 So. 2d 429, 433 (Fla. 1998) ("A sentence that patently fails to comport with statutory or constitutional *limitations* is by definition 'illegal'." (emphasis supplied)).[3] When

---

[2] The defendant appeals both the judgment of conviction and the sentencing order. To the extent the majority affirms the judgment, I concur in that disposition.

[3] The supreme court later adopted a more "workable definition of 'illegal' sentence," using a description that the Fourth District previously had set out, as follows: a sentence that "imposes a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." *Carter v. State*, 786 So. 2d 1173, 1181 (Fla. 2001) (quoting *Blakley v. State*, 746 So. 2d 1182, 1187 (Fla. 4th DCA 1999)). The Fourth District's broader definition in *Blakley*, though, merely captured additional circumstances in which the supreme court had concluded a trial judgeexceeded *limitations* placed on his authority. *See Blakley*, 746 So. 2d at 1186 ("The rationale of the supreme court in *Davis, Callaway, Hopping* and *Mancino,* is that [among other things] *no judge can* impose more time for

we consider a sentence's alleged illegality, we really are looking at whether it is constitutionally infirm. Constitutional rights typically operate to check the exercise of sovereign power—negative rights. And negative rights are at stake when an appellate court considers whether a sentence imposed is illegal: rights *against* the trial judge's imposition of punishment in excess of his *punishment* authority. In other words, the concern behind the legality of a sentence is one regarding constitutional *limits* on the trial judge, the constitution effectively confining the judge's *punishment* authority to what the Legislature sets that authority to be. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("Thus, the question of what *punishments* are *constitutionally* permissible is not different from the question of what *punishments* the Legislative Branch *intended* to be imposed." (emphases supplied)); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("[T]he substantive power to prescribe crimes and determine *punishments* is vested with the legislature." (emphasis supplied)).

Relevant to this case, the Legislature defines the crime "Driving Under the Influence" ("DUI") as a person driving or maintaining control of a vehicle while his "normal faculties are impaired" by drugs or alcohol; or if he registers above a specified blood-alcohol-content or breath-alcohol-content threshold percentage. *See* § 316.193(1), Fla. Stat. If the offense leads to or causes someone's death, the Legislature labels the offense as "DUI manslaughter" and classifies the offense as a second-degree felony, significantly enhancing the authorized *punishment*—to a statutory maximum of fifteen years in prison. *See id.* (3)(c)1. (classifying "DUI manslaughter" as a "felony of the second degree, *punishable* as provided in s. 775.082" (emphasis supplied)); § 775.082(3)(d), Fla. Stat. (providing that a "person who has been convicted of" a second-degree felony "may be *punished* . . . by a term of imprisonment not exceeding 15 years" (emphasis supplied)).

A jury found the State had proved beyond a reasonable doubt that the defendant was guilty of DUI manslaughter, as the

---

incarceration than all the laws combined would allow . . . ." (emphasis supplied)).

Legislature has defined the crime. As discussed above, this conviction by law authorized the trial judge to *punish* the defendant with an imprisonment period up to and including fifteen years. *Cf. United States v. Haymond*, 588 U.S. 634, 647 (2019) (noting there is no license for "judges to sentence individuals to punishments beyond the legal limits fixed by the facts found in the jury's verdict"). The punishment that the trial judge imposed on the defendant, then, did not exceed the statutory *punishment* authorized by the jury's verdict and the applicable sentencing provision duly enacted by the Legislature. In short, the sentence is not illegal.

The defendant nevertheless argues that—even though the fifteen-year sentence exceeds no statutory limit—the sentence is illegal just the same because it does not contain a probation component, something he implicitly contends constitutionally *must* be imposed because the Legislature by statute directs it. In turn, the vacatur of the sentence here is not because the trial judge *exceeded* his authority to punish; but, essentially, because the otherwise *authorized* sentence still was somehow *too long*. As the argument goes, even though the Legislature authorized the punishment imposed by the judge here, the punishment was the statutorily authorized maximum term, so there was no allowance for the unspecified probationary period that section 316.193(5) mentions as a matter of general policy. The limited judicial power vested in this court does not allow for this disposition. This approach establishes a new right, one the Legislature did not provide for; *and* it purports to remedy a harm that the supreme court and this court have said is not constitutionally cognizable.

B

The provision we are discussing states that the sentencing court "shall place all offenders convicted of violating this section on monthly reporting probation and shall require completion of a substance abuse course conducted by a DUI program." § 316.193(5), Fla. Stat. But this provision cannot be read to vest the defendant with a *right* to probation or a substance abuse course. It also cannot be read to entitle the defendant to a prison sentence less than the statutory maximum—just so that he can complete that probation or complete that substance abuse course.

14

The constitution simply does not speak in terms of guaranteeing a certain sentence or benefit as part of the sentence. Nor does it grant positive rights entitling the criminal defendant to *compel* the court to grant an authorized *benefit*.

In other words, there is no positive constitutional right to the judicial rehabilitation that probation allows, no right to force a trial judge to exercise his discretion on this in a certain way. A failure to include a benefit within a sentence does not implicate the constitution, so the benefit's absence cannot make the sentence illegal. Appellate review, in the sentencing context, considers the *limits* on a trial judge's authority and whether he has exceeded them. A trial judge's failure to abide by a policy statement that probation generally should be included as part of sentencing for DUI manslaughter—if that is even a proper reading of section 316.193(5)—does not give rise to the individualized harm required for the exercise of our appellate judicial power.[4]

---

[4] The concurring opinion mischaracterizes what I am saying here. A trial judge is not free to "disregard" a legislative policy directive. At the same time, the judge's failure to abide by that policy does not always result in a defendant's suffering cognizable harm that we then can remedy on appeal. We simply do not have the authority to correct just any failure by a trial judge to comply with a statute (or even the constitution); the defendant must first demonstrate that a *cognizable* substantive right—inhering to either the proceeding at hand (*e.g.*, trial or sentencing) or the judgment or final order produced by that proceeding—has been infringed. The Legislature, in fact, precludes us from reversing a judgment unless, in our opinion, an "error was committed that injuriously affected the substantial rights of the appellant," and harm, notably, is not to be "presumed." § 924.33, Fla. Stat. Both the U.S. Supreme Court and our supreme court have held that not even every *constitutional* error is sufficiently harmful to support reversal. *See Chapman v. California*, 386 U.S. 18, 21–22, 26 (1967) (looking instead to whether the error infringed the defendant's right to a fair proceeding); *State v. DiGuilio*, 491 So. 2d 1129, 1134 (Fla. 1986) (upholding constitutionality of section 924.33, Florida Statutes, as "respect[ing] the constitutional right to a fair trial free of harmful error but direct[ing] appellate courts not to apply a

I mentioned above how trial judges do not have inherent authority to grant probation; there must first be legislative authorization. *Cf. Ex parte United States*, 242 U.S. 27, 41–42 (1916) (rejecting argument that a court has inherent power or discretion to "relieve" a defendant "from the punishment fixed by law"); *United States v. Murray*, 275 U.S. 347, 356 (1928) (recognizing that there first must be legislative authorization for probation; which, for federal courts, came with the Probation Act). Once there is authorization, though, probation, as is oft stated, "rests within the broad discretion of the trial judge and is a matter of [judicial] grace *rather than right*." *Bernhardt*, 288 So. 2d at 494 (emphasis supplied); *see also Burns v. United States*, 287 U.S. 216, 220 (1932) ("Probation is thus conferred as a privilege, and *cannot be demanded as a right*." (emphasis supplied)); *Escoe v. Zerbst*, 295 U.S. 490, 492–93 (1935) ("Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose.").

"Because probation is a 'matter of grace,' even where statutes authorize a grant of probation to those who have been found guilty of criminal violations, trial courts are *not required to extend the privilege*." *Lawson v. State*, 969 So. 2d 222, 229 (Fla. 2007) (emphasis supplied); *see also Cochran*, 140 So. 2d at 599 (noting, as quoted above, that statutory authorizations of "probation privileges . . . are not mandatory upon the trial judges" and instead allow for judicial grace to be granted to those who likely can be rehabilitated).[5] Probation "is a matter of favor, not of contract," so

standard of review which requires that trials be free of harmless errors"). As explained, a legislative requirement that probation be part of a sentence does not effectively create a new substantive right to probation. The defendant in this case fails to identify a cognizable harm (stemming from infringement of a right) caused by the trial judge's sentence, so we lack the authority to provide him an appellate remedy.

[5] This suggests there may even be a separation-of-powers problem in the Legislature's effort to direct or mandate the exercise of judicial grace. And to the extent the Legislature fails to specify the length of probation it mandates be imposed as

16

"[t]here is no requirement that it must be granted on a specified showing." *Burns*, 287 U.S. at 220.[6] Indeed, "[t]he defendant stands convicted; he faces punishment, and cannot insist on terms or strike a bargain." *Id.* In the case below, the trial judge considered the defendant's criminal history and apparent lack of amenability to rehabilitation (not to mention the circumstances of the instant crime), and he decided not to extend the privilege of probation as part of the sentence.

The defendant, then, is hard-pressed to explain how he has an enforceable right to both a shorter-than-otherwise-authorized punishment *and* a term of probation of undefined length. *Cf. Gazoombi*, 406 So. 3d at 380 (holding "there is no meritorious appellate claim to a particular sentence within a statutorily authorized range because a defendant does not have a right to have the trial court impose one sentence instead of another"); *id.* (explaining that there is no cognizable harm stemming from a prison sentence falling within the legislatively authorized range). If there is no right, there is no harm to remedy—and there is no basis for the exercise of appellate judicial power. *See id.* at 378 (noting that "whether there is substantive harm to be remedied *is the threshold question* in any direct appeal"); *see also Earl v. State*, 314 So. 3d 1253, 1255–56 (Fla. 2021) (approving denial of appellate relief because the appellant could not "show that the denial of his rule 3.800(a) motion resulted in harm that may be remedied on appeal"); *Swift Response, LLC*, 401 So. 3d at 643 (reviewing supreme court decisions defining judicially remediable harm in

---

rehabilitation—leaving it to the courts to figure out—the ostensible requirement in subsection five potentially is an impermissible delegation of legislative authority.

[6] In the light of the foregoing, subsection five easily can be read to effectively direct that when a trial judge *does* decide, in his authorized discretion, to include probation as part of a DUI sentence, the judge include completion of a substance abuse course as a condition. That directive is a policy matter, and, as addressed in the margin above, compliance is enforceable through the political process, not direct appellate review.

terms of impaired legal rights stemming from the constitution, statutes, or common law).

There is another way this case's disposition is problematic. It does not easily lend itself to setting out guidance to the trial judge for how, on remand, he is supposed to honor this judicially created right to a probation period of "sufficient length" to allow for the rehabilitative substance abuse course. No one can know what that length must be. Inevitably, there will be another appeal from the underlying case, once the judge resentences the defendant to comply with this court's mandate—and perhaps another appeal after that, and then another—all these appeals challenging successively progressive lengths of probation as being too short; so, necessarily, contesting the regressively shorter sentence lengths (still statutorily authorized, do not forget) as being too long. Subsequent panels of this court will have to wrestle with figuring out the proper lengths in those coming appeals—a function at all events we are ill-equipped to perform, not to mention one that the supreme court has repeatedly foreclosed.

* * *

The defendant fails to state a cognizable harm that we can remedy. We should affirm both the convictions and his sentence.

_____

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Robert "Charlie" Lee, Assistant Attorney General, Tallahassee, for Appellee.

18